580 So.2d 1182 (1991)
James Albert KING, Hattie Ray King and Johnny Wayne King
v.
STATE of Mississippi.
No. 07-KA-59203.
Supreme Court of Mississippi.
May 3, 1991.
*1184 James W. Burgoon, Jr., Fraiser & Burgoon, Greenwood, J.P. Coleman, Coleman & Coleman, Ackerman, James D. Franks, Hernando, for appellants.
Mike C. Moore, Atty. Gen., Charles W. Maris, Jr., Sp. Asst. Atty. Gen., Jackson, for appellee.
Before ROY NOBLE LEE, C.J., and PRATHER and ROBERTSON, JJ.
PRATHER, Justice, for the court:

I. INTRODUCTION
This Tallahatchie County case involves three appellants: Johnny Wayne King and his parents, James Albert and Hattie Ray King. All three were indicted for conspiracy, obstruction of justice, and bribery  charges which stemmed from unsuccessful attempts to influence jurors in a drug trial in which Johnny was the defendant.[1]
James is appealing his conviction of all three charges. Hattie is appealing her conviction of the conspiracy charge. And Johnny is appealing his conviction of conspiracy and bribery. This Court affirms James and Johnny's convictions and reverses Hattie's conviction.

A. The Facts
The facts of this case are disputed but uncomplicated; they are presented in this opinion as they were presented by the State at trial. The Kings did not present their own version; they simply denied guilt.
In the fall of 1986, Johnny Wayne King was indicted for sale of a controlled substance. Soon after empanelment of the jury, Johnny, James, and Hattie King decided to "fix" the trial. They hired their friends, William Taylor and L.B. Govan, to contact several jurors and offer them "incentives" in exchange for their agreement to cast a "not guilty" vote or "hang up" the jury.[2]
Taylor contacted jurors, Charlotte Truly and Gwendolyn Harris, in person at their homes and "insisted" that they vote "not guilty" at Johnny's trial.[3] Both Truly and Harris refused Taylor's request and ordered him to leave.
Meanwhile, Govan contacted another juror, Irene Edwards, in person at her home. Edwards testified that Govan promised her that the Kings would "make it worth her while" if she "hung up the jury" by casting a "not guilty" vote.
Finally, Minnie Smith testified that James and Johnny one night entered the Mr. Jiffy Convenience Food Store where she works. The Kings did not say anything to her; they simply purchased a coke and some cigarettes and then left. Smith noted that the store manager and another employee were present at the time and that, over the past ten years, she had never before seen the Kings in the store.
*1185 The three jurors  Truly, Edwards, and Harris  immediately informed the bailiff that they had been contacted by Taylor and Govan. Judge Carlson immediately held a hearing in chambers and declared a mistrial.
After an investigation, the Kings were indicted for conspiracy, obstruction of justice, and bribery. On July 21, 1987, Judge Carlson held a trial. After four days of testimony, the jury found James guilty of all three charges; it found Hattie guilty of conspiracy; and it found Johnny guilty of conspiracy and bribery. Judge Carlson subsequently sentenced: (1) James as an habitual offender to a total of 14 years' imprisonment and fined him $6,500; (2) Hattie as an habitual offender to 5 years' imprisonment and fined her $5,000; and (3) Johnny as an habitual offender to a total of 10 years' imprisonment and fined him $6,000.

B. The Issues
The appellants presented numerous issues. These issues are addressed in the following section and, for the sake of brevity and clarity, some issues have been consolidated and some paraphrased.

II. ANALYSIS
In Section II(A), James and Hattie's issues are addressed. Johnny's are addressed in Section II(B).

A. James and Hattie's Issues

1. Issue: Whether the Indictment Was Legally Sufficient?
Prior to trial, James and Hattie filed a motion through which they contended that the indictment failed to set forth facts which would have sufficiently apprised them of the "nature and cause of the accusations against them." Judge Carlson disagreed: "I've ... stud[ied] the indictment and the statutes, and, also, the applicable case law and also Rule 2.05 of the Uniform Criminal Rules of Circuit Court Practice ... [and] I'm satisfied the [motion] should be overruled." James and Hattie appealed this decision.
"Questions regarding the adequacy of indictments are tested by Rule 2.05 of the Uniform Criminal Rules of Circuit Court Practice." Winston v. State, 479 So.2d 1093, 1095 (Miss. 1985). "The major purpose of an indictment is to furnish the accused such a description of the charges against him as will enable him to adequately prepare his defense." Williams v. State, 445 So.2d 798, 804 (Miss. 1984) (citing Westmoreland v. State, 246 So.2d 487 (Miss. 1971); Woods v. State, 200 Miss. 527, 27 So.2d 895 (1946)). The description should include a "concise and clear statement of the elements of the crime charged." Id. (citing Love v. State, 211 Miss. 606, 52 So.2d 470 (1951)). "Nothing more is required." Id.; see Cantrell v. State, 507 So.2d 325, 329 (Miss. 1987) ("The rule in this state is that an indictment which states the statutory language is generally sufficient to inform the accused of the charge against him.").
This Court has perused the nine-page indictment and concludes that it comported with relevant law  i.e., the Kings were sufficiently apprised of the offenses with which they were charged. The indictment cites and "tracks," or quotes, relevant statutory language and, in accordance with Rule 2.05 and case law, it provides a concise description of the essential facts pertaining to each offense. See MISS. CODE ANN. § 97-1-1 (1990 Supp.); id. §§ 97-9-55 & 97-9-5 (1972). In sum, Judge Carlson properly overruled the motion.

2. Issue: Whether James' Summary Incarceration Prior to Trial Was Improper?
On July 14, 1987, James filed an "Application and Affidavit for Continuance." James requested a continuance because he had scheduled a "doctor's appointment" in Memphis, Tennessee, on July 20, 1987  the day before the trial was set to begin. More specifically, James explained that, as result of an auto accident which occurred several months earlier, he scheduled himself to undergo medical testing at a Memphis hospital; therefore, he would be unable to attend the trial on the date set.
*1186 On July 17, Judge Carlson held a hearing on James' "application." At the conclusion of the hearing, Judge Carlson rejected James' application. James appealed this decision and now contends that his so-called "summary incarceration" violated his constitutional and statutory rights.
Disposition of this issue is unnecessary; whether the judge improperly incarcerated James has nothing to do with the merits of this case and, as a consequence, reversal is not a possible remedy.[4] This Court therefore rejects James' contention without prejudice. If James continues to feel aggrieved, he may opt to seek a remedy, if any, other than reversal of this case.

3. Issue: Whether Violation of the Sequestration Order Should Have Resulted in a Mistrial?
Pursuant to Judge Carlson's sequestration order, the jurors along with the bailiffs stayed at a Holiday Inn each night of the four-day trial. On two occasions, three of the jurors visited the Inn's "Tadpole" Lounge. Upon learning of the jurors' visits, James and Hattie filed a post-trial "Motion to Set Aside Verdict, Declare Mistrial, and Grant a New Trial." During a hearing on the motion, the three jurors testified that they did not discuss the case with each other nor with anyone else. At the conclusion of the hearing, Judge Carlson denied the motion and reasoned:
It is admittedly regrettable and disturbing that 3 of the younger male jurors took it upon themselves to consume alcohol at the motel lounge and in their rooms during the overnight recesses, and the Court is disappointed in their conduct. But disappointment does not bring about vitiation of the guilty verdicts. The record is clear that any consumption of alcohol in no way affected their ability to perform their duties as jurors, and there was at no time discussion with any one about the case during this period of time.
... .
Based on the facts and circumstances peculiar to this particular case, as revealed in the record of the post trial motion hearing, and based on the entire record in this case, the Court is satisfied that a fair and impartial jury reached verdicts based on the evidence and the law. This is true of the guilty verdicts returned, and this is true of the not guilty verdicts returned. This Court is satisfied that, except for the aforementioned consumption of alcohol, the jurors followed the instructions of the Court regarding their conduct. This Court will admit that it could not, and did not, give these Defendants a perfect trial; but they did receive a constitutionally fair trial.
Record Vol. III, at 198 & 201-03. James and Hattie appealed this decision.
In Weaver v. State, this Court held that a "presumption [exists] that jurors follow the instructions of the court relative to their conduct during the course of the trial." 272 So.2d 636, 638 (Miss. 1973), quoted in Stringer v. State, 279 So.2d 156, 160 (Miss. 1973). The Court added that it will not conclude that prejudice resulted by separation of the jury "in the absence of any evidence to the contrary." Id. "Separation of jurors, under proper instructions by the court in a criminal case less than capital, is not error." Id. (emphasis supplied by this Court in Stringer v. State).
In Schwarzauer v. State, 339 So.2d 980, 981 (Miss. 1976), this Court concluded that a determination of whether an improper separation of sequestered jurors resulted in prejudice must be made on an ad hoc basis. Restated, the "rule is that such cases must be decided upon the particular facts and circumstances of each case and considerable discretion is vested in trial judges when confronted with [such an issue]." Id. (citing United States v. Perez, 22 U.S. (9 Wheat.) 579, 6 L.Ed. 165 (1824)); see also Lampley v. State, 291 So.2d 707 (Miss. 1974) (case in which this Court held that separation of jurors did "not vitiate the verdict" of guilty); White v. State, 566 So.2d 1256, 1260-61 (Miss. 1990) (In this case involving juror misconduct, this Court *1187 held: "Applying our standard of review to the findings of fact made by the court, we are of the opinion that the lower court did not err in overruling the motion for a new trial.") (citing Carter v. State, 493 So.2d 327 (Miss. 1986); Neal v. State, 451 So.2d 743, 753 (Miss. 1984); Anderson v. State, 231 Miss. 352, 95 So.2d 465 (1957)); cf. Carter, 493 So.2d at 329 ("[A]ny presumption of prejudice may be rebutted by an affirmative showing that no such prejudice exists.") (citing Anderson, 231 Miss. at 352, 95 So.2d at 465; Pepper v. State, 200 Miss. 891, 27 So.2d 842 (1946)).
In sum, James and Hattie failed to present even a scintilla of evidence evincing influence of a juror and resultant prejudice; thus, Judge Carlson did not abuse his discretion by denying their motion. This Court affirms.

4. Issue: Whether the Evidence Is Legally Sufficient to Support Hattie's Conviction of Conspiracy?
As noted in Section I of this opinion, the jury found Hattie guilty of conspiracy only. Hattie now contends that the evidence does not support the verdict. The State concedes: "Undeniably, the evidence against Hattie King is close." The State nonetheless concludes that the evidence does support the verdict.
This issue will be treated as an appeal of the judge's denial of Hattie's j.n.o.v. motion. In circumstantial-evidence cases such as this:
the test to be applied on motion for judgment of acquittal and on review of denial of such motion is not simply whether in the opinion of the trial judge or the appellate court the evidence fails to exclude every reasonable hypothesis, but that of guilt, but rather whether the jury might reasonably so conclude.
McDonald, 454 So.2d at 493 (quoting Harper v. United States, 405 F.2d 185 (5th Cir.1969) (quoting Vick v. United States, 216 F.2d 228 (5th Cir.1954)). Considering as true all the evidence most favorable to the State, together with reasonable inferences, this Court is unpersuaded that the jury could have excluded "every reasonable hypothesis consistent with innocence." Mack v. State, 481 So.2d 793, 796 (Miss. 1985) (Robertson, J., concurring) (emphasis added). The only evidence which the State presented to prove that Hattie was a member of the conspiracy was the testimony of William Taylor. Taylor testified that, late one night, James drove to his house:
Q. Did he [James] have anybody with him?
Taylor: His wife.
Q. Hattie Ray?
Taylor: Yes, sir.
Q. What happened when he came ... by there?
Taylor: He come ... by and asked me about the [jury] list [which he had given me during a previous meeting] and where it was and I told him it was in the house. He told me to go in there and get it.
Q. What did you do?
Taylor: Went back in there and got it and gave it to him.
Q. What did he say to you?
Taylor: He said  said the law might come around to talk to [me], and I said, "About what, I ain't did nothing," and he said, "Well, I don't know, but I believe they're going to come around and talk with you."
Q. What did he say for you to do?
Taylor: He told me to keep his name out of it.
Q. What did Hattie Ray say?
Taylor: I don't think she said anything.
Q. You don't remember her saying anything?
Taylor: No, sir.
Q. Was she there with him while the conversation was going on?
Taylor: Yes, sir.
Vol. VII, at 568-69 (This meeting between James and Taylor transpired after Taylor had attempted influence jurors, Truly and Harris).
Thus, the only evidence discoverable in the record, which suggests that Hattie was a member of the conspiracy, was her presence in the vehicle when James drove to Taylor's house one night to pick up the jury *1188 list and warn Taylor to keep quiet if investigators pay him a visit. "Mere presence at the scene of the crime, even when coupled with knowledge that a crime is being committed, is insufficient to establish membership in a conspiracy." Moreover, "mere association with conspirators is similarly insufficient." Davis v. State, 485 So.2d 1055, 1058 (Miss. 1986) (citing authoritative support); see McDonald v. State, 454 So.2d 488 (Miss. 1984) ("It is elementary that neither association with conspirators nor knowledge of illegal activity constitutes proof of participation in a conspiracy."); see also United States v. Andolschek, 142 F.2d 503, 507 (2d Cir.1944) ("It is true that at times courts have spoken as though if A. makes a criminal agreement with B., he becomes a party to any conspiracy into which B. may enter, or may have entered, with third persons. That is of course an error: the scope of the agreement actually made always measures the conspiracy, and the fact that B. engages in a conspiracy with others is as irrelevant as that he engages in any other crime... . [In order for B. to considered a member of the conspiracy, B.] must be aware of th[e] purposes [of the conspiracy], must accept them and their implications. ...") (emphasis in original). For further analysis of the law of conspiracy, see Davis, 485 So.2d at 1057-59, and McDonald, 454 So.2d at 488.
Admittedly, Hattie probably heard all that was said during James and Taylor's conversation. However, hypothetically, the phraseology being used was so general or generic that a disinterested or unknowledgeable bystander would not have understood what James and Taylor were specifically talking about. An individual may not be deemed a co-conspirator absent proof that the individual recognized her entrance into or participation in some kind of common plan and knowingly intended to further its common purpose. McDonald, 454 So.2d at 495; see also Davis, 485 So.2d at 1058 ("There must exist some evidence that a defendant has associated himself with the venture in some fashion, participated in it as something that he wished to bring about, or sought by his action to make it succeed.") (citing cases).
Clearly, the record is devoid of evidence reflecting beyond a reasonable doubt the requisite mens rea of knowledge. The very best the State can claim with respect to Hattie is guilt by association, which is clearly insufficient to sustain a conviction of conspiracy.
Finally, the facts of this case are analogous to those of McDonald, 454 So.2d at 488. In McDonald, this Court reversed and rendered after concluding that the State's case against one of the alleged conspirators, Miss Bookout, did not support the jury verdict:
Crediting all the evidence and all reasonable inferences most favorable to the government, we are unpersuaded that the jury could reasonably exclude the hypothesis that Miss Bookout did not enter into the conspiracy to utter the counterfeit currency.

Miss Bookout did nothing and said nothing from which the jury could reasonably infer that she entered the conspiratorial agreement prior to the attempt by Miller to pass the bill in the Broward Drug Store. Certainly, no event occurred in the Capatorto home supportive of such an inference. At most, the evidence reveals that Bookout first gained knowledge of the plan when she entered the Miller bedroom to comb her hair. She did not indicate at the time that she gave any attention to the transaction and conversation underway at the bed, but the government is entitled to the inference that she overheard plans being discussed as to methods of using the money.
... .
In sum, we are left with an abiding conviction that the jury's verdict of guilty as to Bookout is based upon suspicion and surmise only. She associated with the wrong people and was convicted because of guilt by association only. Her conviction for conspiracy may not be permitted to stand since we conclude that *1189 the inference of her guilt was not a reasonable one for the jury to entertain.
Id. at 493-94 (emphasis in original).
In sum, the case against Hattie is simply too weak to support the verdict. This Court is left with little choice but to reverse and render the case against Hattie.

5. Whether Hattie's Request for a Circumstantial-Evidence Should Have Been Granted?
In view of this Court's disposition of the case against Hattie, this issue need not be reached.

B. Johnny's Issues

1. Issue: Whether the State's Motion in Limine Was Properly Granted?
As discussed in Section I of this opinion, the charges in the case sub judice stemmed from the Kings' unsuccessful attempts to influence jurors in a drug trial involving Johnny. The judge declared a mistrial in the drug trial, and a second drug trial got underway. In the second trial, the jury found Johnny not guilty of the drug charge.
In the case sub judice, the State made a motion to "limit and restrict [Johnny] and counsel and any of their witnesses from making any reference either direct or indirect about the acquittal of Johnny" in his second trial on the drug charge. The State reasoned: "We believe that the fact that he was acquitted is totally irrelevant ... to the matter being tried now." Johnny responded that his "acquittal ... is clearly and definitely relevant to show the lack of motive." Restated, Johnny contended he should be permitted to reveal to the jury in the case sub judice that, "having been found innocent [in the second drug trial, he] would have had no motive to be involved in any type of jury tampering scheme." The judge granted the State's motion, and Johnny appealed.
Rules 401 and 402 of the Mississippi Rules of Evidence are relevant to the disposition of this issue. Under Rule 401, evidence is relevant if it tends to "make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." See, e.g., Mississippi State Highway Comm'n v. Dixie Contractors, Inc., 375 So.2d 1202, 1205 (Miss. 1979). Under Rule 402, evidence "which is not relevant is not admissible."
Judge Carlson concluded that Johnny's acquittal of the drug charge had no relevance "whatsoever"  i.e., the evidence had no probative value in proving or disproving the probability that Johnny attempted to influence the jury in his first drug trial. This Court agrees and affirms his decision. Sanders v. State, 429 So.2d 245, 251 (Miss. 1983).

2. Issue: Whether Prejudicial Comments by the Prosecutor and a State's Witness Should Have Resulted in a Mistrial?
During the course of the trial, several improper comments were uttered by the prosecutor and a State's witness. In each instance, Johnny moved for a mistrial, and Judge Carlson overruled the motion and instructed the jury to disregard the comment. Johnny appealed the judge's decisions.
The trial judge "is in the best position for determining the prejudicial effect of an objectionable [comment]." Alexander v. State, 520 So.2d 127, 131 (Miss. 1988). Assuming the comment is not wholly harmless, the prejudicial effect may be sufficiently alleviated if the judge instructs the jury to disregard it. See Johnson v. State, 477 So.2d 196, 210 (Miss. 1985). "In such cases where the prejudicial effect of what the jury heard was such that no amount of subsequent admonition from the trial judge would be likely to eradicate from the jury's mind the prejudicial effect, we reverse, although such occasions are rare." Weaver v. State, 497 So.2d 1089, 1094 (Miss. 1986); see also Dennis v. State, 555 So.2d 679, 680 (Miss. 1989); McFee v. State, 511 So.2d 130, 135-36 (Miss. 1987).
Applying this law to the facts, this Court concludes that the comments do not warrant reversal. The instruction to the jury to disregard the comments sufficiently alleviated *1190 any prejudicial effect it may have had on Johnny's right to a fair trial, and the jury is deemed to have acted in good faith and to have followed the judge's instructions. Weaver, 497 So.2d at 1094; Johnson v. State, 475 So.2d 1136, 1142 (Miss. 1985) (same).

3. Issue: Whether Donna Moore's Testimony Violated Attorney-Client Privilege?
This issue concerns the admissibility of Moore's testimony about typing the jury list as requested by James and Johnny, and it concerns the admissibility of the list itself. Johnny objected to the admissibility of the testimony and the list on the ground that such evidence was "privileged." In other words, admitting such evidence constituted a breach of the attorney-client privilege. Judge Carlson overruled the objection, and Johnny appealed.
This Court's holding in Rogers v. State is dispositive of this issue:
We are of the opinion the evidence was not privileged since it revealed nothing given in confidence, did not involve an attorney's advice emanating from an attorney/client relationship, and in fact, related to the preparation of two deeds, the description of which was related to the secretary of the attorney. We conclude that Randel v. Yates, 48 Miss. 685 (1873), is controlling. We there stated:
As a general rule, every communication which the client makes to his legal adviser, for the purpose of professional advice or aid upon the subject of his rights or liabilities, is to be deemed confidential. But privileged communications do not extend to one acting as a mere scrivener, although of the legal profession... .
An attorney who is requested to prepare a deed or mortgage, no legal advice being required, is not privileged, and may testify as to what comes to his knowledge in connection with such transaction. And when the terms of a contract have been agreed upon between the parties, and an attorney is afterwards employed as a scrivener merely to reduce the contract to writing, and no inquiry is made of him as to its legal effect, communications made to him, while thus engaged, will not be regarded as privileged... . (48 Miss. at 689).
266 So.2d 10 (Miss. 1972) (citations in original); accord MISS.R.EVID. 502 ("Lawyer-Client Privilege").
Applying relevant law to the facts, this Court finds no merit in Johnny's contention. The judge's decision is therefore affirmed.

4. Issue: Whether Minnie Smith's Testimony Was Properly Admitted?
As discussed in Section I(A) of this opinion, Minnie Smith (a juror in Johnny's first drug trial) testified that James and Johnny one night entered the Mr. Jiffy Convenience Food Store where she works. Johnny objected to the admissibility of this testimony on the basis that it constituted a violation of Rule 404(b) of the Mississippi Rules of Evidence (i.e., admissibility of evidence pertaining to other crimes, wrongs, or acts). Judge Carlson overruled the objection, and Johnny appealed.
In view of the facts, this Court concludes that Rule 404(b) has no application and that the decision to admit the evidence did not constitute an error. The decision is therefore affirmed.

5. Issue: Whether Johnny's Request for a Directed Verdict Should Have Been Granted?
Johnny twice moved for a directed verdict and, each time, Judge Carlson denied the motions. Johnny now asks this Court to review all the evidence  pursuant to the familiar standard  and determine whether it sufficiently supports the convictions of conspiracy and bribery. See Stubblefield v. Jesco, Inc., 464 So.2d 47, 54 (Miss. 1984); Paymaster Oil Mill Co. v. Mitchell, 319 So.2d 652, 656-57 (Miss. 1975). With relevant law in mind, the following evidence and favorable inferences are considered in a light most favorable to the State in order to determine if the conspiracy *1191 and bribery convictions are sufficiently supported.
Donna Moore, secretary for one of Johnny's attorneys, testified that Johnny did some of the talking when he and his father dropped by the office to ask her to type up a list containing the names of the twelve selected jurors and two alternates. Moore also testified that Johnny took the list from her and made photocopies of it on the office copier machine.
L.B. Govan, a witness for the State, testified that Johnny drove his father, James, to his (Govan's) home where James approached him (Govan) about the scheme to bribe Irene Edwards, a juror in Johnny's first drug trial. More specifically, James provided Govan with a copy of the jury list and asked him to inform Edwards that he (James) would "make it worthwhile" if she would "hang" the jury in Johnny's trial. During the entire conversation, Johnny listened as his father schemed. Thus, Johnny knew what was going on; he fully comprehended the scheme being executed by his father. Govan added that Johnny returned with his father to check on his success with Edwards (i.e., to find out whether Edwards would agree to "hang" the jury). Again, Johnny listened as James questioned Govan about Edwards' response.
Minnie Smith testified that, during Johnny's drug trial, he (Johnny) and his father entered the Mr. Jiffy Convenience Food Store where she worked  albeit they left the store without speaking to her. Smith noted that her manager and another employee were present when James and Johnny entered the store and that she had never seen them in the store prior to that time (she had worked at the Mr. Jiffy for ten years).
Finally, Investigator Jimmy Dees, who conducted the search of the King's residence, testified that he discovered the photocopies of the jury list under the seat of Johnny's truck.
With relevant law in mind, the State's case against Johnny is, admittedly, not ironclad. This notwithstanding, this Court would be hardpressed to hold that the evidence and inferences "point so overwhelmingly in favor of [Johnny] that reasonable men [and women] could not have arrived at a ... verdict" like the one "arrived at" by the jury in the case sub judice. Stubblefield, 464 So.2d at 54. Restated, the evidence and inferences should be deemed of sufficient "quality and weight that reasonable and fairmindedmen [and women] in the exercise of impartial judgment might reach different conclusions." Id. at 54. This being said, the verdict shall remain undisturbed. Compare with Davis, 485 So.2d at 1058 (analogous conspiracy case in which the issue concerned sufficiency of the evidence).
In sum, the evidence is deemed legally sufficient. This Court therefore affirms Judge Carlson's denial of the directed-verdict motion.

6. Issue: Whether a Circumstantial-Evidence Instruction Should Have Been Granted?
Judge Carlson refused to grant a circumstantial-evidence instruction, and Johnny contends that this refusal constituted a reversible error since the State's case against him was based wholly on circumstantial evidence.
The evidence presented by the State is a mixture of both direct and circumstantial  albeit mostly the latter. This Court has held that, "where there is direct evidence of a crime, the circumstantial evidence instruction need not be given." Gray v. State, 549 So.2d 1316, 1324 (Miss. 1989). Therefore, Judge Carlson did not err in refusing a circumstantial-evidence instruction in Johnny's case.

7. Issue: Whether Instruction No. D-23 Should Have Been Granted?
Johnny requested an instruction designated as D-23. Judge Carlson denied the request, and Johnny appealed. This Court has examined the record, briefs, and relevant law and concludes that the judge committed no reversible error. Therefore, this Court affirms the denial.

*1192 8. Remaining Issues

The three remaining issues are duplicative of three issues presented by James and Hattie in their brief. Johnny did not address the issues in his brief; he simply "incorporated by reference that portion" of James and Hattie's brief which related to these issues. Therefore, because the issues have been addressed in Section II(A) of this opinion, further discussion is unwarranted.

III. CONCLUSION
For the foregoing reasons, this Court affirms James' and Johnny's convictions and reverses Hattie's conviction.
COUNT I: JAMES ALBERT KING AND JOHNNY WAYNE KING'S CONVICTION OF CONSPIRACY, SENTENCE OF FIVE (5) YEARS AS HABITUAL OFFENDERS AND $5,000 FINE, AFFIRMED; HATTIE RAY KING'S CONVICTION OF CONSPIRACY, SENTENCE OF FIVE (5) YEARS AS AN HABITUAL OFFENDER AND $5,000 FINE, REVERSED AND RENDERED. COUNT II: JAMES ALBERT KING'S CONVICTION OF OBSTRUCTION OF JUSTICE, SENTENCE OF TWO (2) YEARS AS AN HABITUAL OFFENDER AND $500 FINE AFFIRMED. COUNT III: JAMES ALBERT KING'S CONVICTION OF OBSTRUCTION OF JUSTICE, SENTENCE OF TWO (2) YEARS AS AN HABITUAL OFFENDER AND $500 FINE AFFIRMED. COUNT IV: JAMES ALBERT KING AND JOHNNY WAYNE KING'S CONVICTION OF BRIBERY, SENTENCE OF FIVE (5) YEARS AS HABITUAL OFFENDERS AND $1,000 FINE, AFFIRMED.
ROY NOBLE LEE, C.J., HAWKINS, P.J., and ROBERTSON, SULLIVAN, PITTMAN and McRAE, JJ., concur.
DAN M. LEE, P.J., concurs in part; dissents in part as to issue No. 8.
BANKS, J., concurs by separate written opinion, joined by ROBERTSON, SULLIVAN and McRAE, JJ.
BANKS, Justice, concurring:
I agree with the disposition of this case but because I cannot agree with the treatment of the issue whether a so-called "circumstantial evidence" instruction should have been given I write to express my views on the matter.
We have treated those cases involving what we call direct evidence differently than those in which only circumstantial evidence is available. Direct evidence has been defined as that which allows a jury to find that the alleged fact is so without resorting to an inference. 1A Wigmore, Evidence in Trials at Common Law. § 25 (1983) For purposes of considering the special instruction here in question, we have held that "direct" evidence is the testimony of "an eyewitness to the gravamen of the offense charged" or a confession. Keys v. State, 478 So.2d 266, 267 (Miss. 1985).
Applying this definition, all of the evidence presented in this case is circumstantial. There is no evidence that the defendant was observed committing the gravamen of the charged offense nor evidence that he admitted the crime. There is no evidence that the defendant spoke to any juror. There is no eyewitness testimony that he agreed to do so or for anyone else to do so. The testimony offered is that the defendant had access to and made a copy of the jury list. This, of course, does not constitute the gravamen of the offense. There are legitimate reasons for having a jury list. The inference urged is that the list was obtained and copied for use in the crime charged. Other testimony is that the defendant was present on an occasion when his father was engaging someone to influence the jury. From his presence then, the jury was asked to infer that the defendant knew what his father was doing and that the defendant approved of his father's actions and that the defendant joined in his father's act. Thus the jury was compelled to infer guilt, there being no eyewitness other than to circumstances and no confession.
Given that this case is entirely based on circumstantial evidence, we turn to the *1193 question whether the failure to give an "other reasonable hypothesis" instruction should require reversal. Under our previous case law, the jury must be instructed in circumstantial evidence cases that the jury must be persuaded of guilt "to the exclusion of every other reasonable hypothesis consistent with innocence." Mack v. State, 481 So.2d 793 (Miss. 1985), Hester v. State, 463 So.2d 1087 (Miss. 1985).
If we are not going to continue to so instruct the jury, we should say so. And, I suggest that we do say so. We should not continue to avoid the issue by pretending that the case before us is one involving "direct" evidence when it is not. I agree with much of what Justice Robertson had to say in his concurring opinion in Mack v. State, 481 So.2d 793, 796-97 (Miss. 1985). The language we have used, "to the exclusion of every reasonable hypothesis consistent with innocence," is just another way of saying "guilty beyond a reasonable doubt."
In Mack, Justice Robertson cited a number of jurisdictions that have abolished the additional circumstantial evidence instruction. These jurisdictions include: the federal courts, Holland v. United States, 348 U.S. 121, 139-40, 75 S.Ct. 127, 137-38, 99 L.Ed. 150, 166-67 (1954); Alaska, Allen v. State, 420 P.2d 465 (Alaska 1966); Arizona: State v. Harvill, 106 Ariz. 386, 476 P.2d 841 (1970); Colorado: People v. Bennett, 183 Colo. 125, 131 fn. 1, 515 P.2d 466, 469 fn. 1 (1973); Hawaii: State v. Bush, 58 Hawaii 340, 569 P.2d 349 (1977); Kansas: State v. Wilkins, 215 Kan. 145, 523 P.2d 728 (1974); Kentucky: Holland v. Commonwealth, 323 S.W.2d 411, 413 (Ky. 1959); New Mexico: State v. Bell, 90 N.M. 134, 560 P.2d 925, 928 (1977); State v. Brown, 100 N.M. 726, 676 P.2d 253, 255 (1984); Oregon: State v. Lerch, 296 Or. 377, 677 P.2d 678, 683-90 (1984); Texas: Rumph v. State, 687 S.W.2d 489, 493 (Tex. App. 1985); Washington: State v. Gosby, 85 Wash.2d 758, 539 P.2d 680 (1975); Wyoming: Blakely v. State, 542 P.2d 857 (Wyo. 1975). None of these jurisdictions have reinstated the circumstantial evidence instruction.
Moreover, other jurisdictions so hold. See, In the Matter of the Use By the Trial Courts of the Standard Jury Instructions in Criminal Cases and the Standard Jury Instructions in Misdemeanor Cases, 431 So.2d 594 (Fla. 1981); People v. Bryant, 113 Ill.2d 497, 101 Ill.Dec. 825, 831-32, 499 N.E.2d 413, 419-20 (1986) ("reasonable theory of innocence" charge for circumstantial evidence is actually "an attempt to define reasonable doubt"); State v. LeClair, 425 A.2d 182, 184 (Me. 1981); State v. Corrado, 172 A. 571, 574 (N.J. 1934) ("where the rule of reasonable doubt is properly charged, the court is not bound to charge the two-theory proposition"); State v. Sutton, 707 P.2d 681, 683 (Utah 1985) ("The only requirement for a jury instruction regarding circumstantial evidence in a criminal case is that the jury be instructed regarding the prosecution's burden of proof. (citations omitted). This requirement may be satisfied by either a "reasonable doubt" or a "reasonable alternative hypothesis" instruction.").
The concept of proof beyond a reasonable doubt is fully embodied in our U.S. Constitution. In Re Winship, 397 U.S. 358, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970). In Winship, the Supreme Court held that the reasonable doubt standard was constitutionally required under the Due Process Clause. In making this holding, the Court reviewed: the acceptance of the practice in common law jurisdictions, the long use of the standard by the Court, and the need to reduce the risk of convicting the innocent. 397 U.S. at 361-64, 90 S.Ct. at 1071-73, 25 L.Ed.2d at 373-75.
No court, however, has found a constitutional basis for a heightened burden of proof in circumstantial evidence cases. Whether proof is made by circumstantial or by direct evidence, the state must show guilt beyond a reasonable doubt. When courts have discussed the propriety of the "other reasonable hypothesis" instruction the decision has turned on whether the court deemed the instruction as potentially confusing to the jury or one that was required to ameliorate confusion. Holland v. United States, 348 U.S. 121, 139-40, 75 S.Ct. 127, 137-38, 99 L.Ed. 150, 166-67 (1954) (potentially confusing); People v. Bryant, 113 Ill.2d 497, 101 Ill.Dec. 825, *1194 831, 499 N.E.2d 413, 419 (1986); (potentially confusing); State v. LeClair, 425 A.2d 182, 184 (Me. 1981) (potentially confusing); Burt v. State, 72 Miss. 408, 412, 16 So. 342, 344 (1894) (would ameliorate confusion); Josephine (a slave) v. The State, 39 Miss. 613 (1860) (would ameliorate confusion). People v. Ford, 66 N.Y.2d 428, 488 N.E.2d 458, 497 N.Y.S.2d 637 (1985) (would ameliorate confusion).
The distinction between direct and circumstantial evidence has long been debated. 1A Wigmore, Evidence in Trials at Common Law, §§ 25-26 (1983). As previously stated, direct evidence has been defined as that which allows a jury to find that the alleged fact is so without resorting to an inference. However, it may be contended that virtually all evidence, including eye witness' testimony, involves an inference. Wigmore notes:
On the supposition that a direct conclusion may be drawn, it is true that no inference may be involved when the issue is, Did X kill Y? and the testimony is, "X killed Y." Here there is, on the present hypothesis, no inference. But of course, in many, if not most, instances, the testimony of the witness will not take this form but will instead take the form, "I saw X shoot a gun at Y." In this instance, the testimony, even if believed, necessitates an inference, viz., the inference from the "observation statement" ("I saw ...") that X did indeed kill Y.
Another required inference here is that the witness' memory of the observation is accurate. Id. note 2, at 953-54. Although there may exist some arguable distinction between "inferences from an assertion" (direct evidence) and "inferences from facts" (circumstantial evidence), it bears noting that:
[E]ach inference depends upon precisely the same general theory... . The judge [or jury] hears with his own ears the statements of the witnesses and sees with his own eyes the documents produced in court. His task is to infer, from what he thus sees and hears, the existence of facts which he neither sees nor hears.
Id. at 954 (quoting Stephen, Indian Evidence Act § 38 (1872).
The distinction in Mississippi case law for jury instruction purposes is traced to: McDaniel v. The State, 16 Miss. (8 S. & M.) 401 (Miss. 1847). There the Court held that the rule had been "laid down by Starkie." 16 Miss. at 419. And, according to Starkie, circumstantial evidence "is a species of evidence which requires the utmost degree of caution and vigilance in its application... ." 1 T. Starkie, A Practical Treatise on the Law of Evidence, and Digest of Proofs, in Civil and Criminal Proceedings, 480 (1826). But, Starkie's treatise does not indicate that a heightened burden of proof should be required where the evidence is circumstantial. Furthermore, in 2 S. Thompson, A Treatise on the Law of Trials in Actions Civil and Criminal, §§ 2500-2501 (1912), cited in Burt, supra, we find the suggestion that:
[U]ndisputed will stand the conclusion that "what circumstances will amount to proof, can never be [a] matter of general definition; the legal test is the sufficiency of the evidence to satisfy the understanding and conscience of the jury. [footnote cited McCann, [v. State] 21 Miss. (13 S. & M.) 471, 490) (1850)] To these definitions, which appear to have been drawn from the text of Starkie, it has been added: "On the one hand, `absolute' metaphysical and demonstrative certainty is not essential to proof by circumstances. It is sufficient if they produce moral certainty, to the exclusion of every reasonable doubt." [footnote cited Browning v. State, 33 Miss. 47, 77 (1857)].
2 Thompson at 1773-1774.
My view is that there is no sufficient distinction between direct and circumstantial evidence that the "exclusion of every other reasonable hypothesis" instruction should be given as any indication of a heightened burden of proof, I see no harm and much merit, however, in refining the concept of reasonable doubt for the benefit of the jury in all cases by giving an instruction as follows:

*1195 The burden of proof is on the state to prove the defendant's guilt beyond a reasonable doubt. This does not require the state to remove fanciful or speculative doubt but only that doubt based on the application of reason to the evidence. It requires the state to establish more than that the defendant is probably guilty. The state is required to produce evidence sufficient to convince you of guilt to the exclusion of every reasonable view of the evidence consistent with innocence.
In order to promote uniformity and eliminate the endless arguments over whether a case is circumstantial or direct, (E.g., Barrett v. State, 253 So.2d 806 (Miss. 1971), (the court split 5-4 over whether the evidence was circumstantial and direct or wholly circumstantial) this instruction should be required in all cases and no instruction mentioning "circumstantial" or "direct" evidence should ever be granted.
ROBERTSON, SULLIVAN and McRAE, JJ., join this concurrence.
NOTES
[1] Specifically, Johnny had been put on trial for "sale of a controlled substance, less than one kilogram of marijuana, habitual."
[2] The Kings had a list  a so-called "strike list"  of prospective jurors for Johnny's drug trial; the list indicated which of the prospective jurors were ultimately selected. The list belonged to one of Johnny's attorneys; this attorney testified that he did not give the list to the Kings but that it "turned up missing."

James and Johnny took the list to the office of another one of Johnny's attorneys. Donna Moore, the attorney's secretary, testified that James and Johnny asked her to take the list and type on a separate sheet of paper only those names which had beside them a "J" ("juror") or an "A" ("alternate"). Johnny then took the new list, made three or four photocopies on the office copier, and left the office.
Mississippi Highway Patrol Criminal Investigator, Jimmy Dees, testified that the Kings told him that one of his attorneys gave them the list. The attorney testified that, contrary to what the Kings told Dees, he did not give them the list.
[3] Taylor was accompanied by a friend, Mack Lake.
[4] Notably, James did receive four days' credit for the time he served pre-trial.