# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2018-KA-01142-COA

**VICTOR WASHINGTON**                                                        **APPELLANT**

**v.**

**STATE OF MISSISSIPPI**                                                      **APPELLEE**

DATE OF JUDGMENT:           01/27/2017
TRIAL JUDGE:                HON. LILLIE BLACKMON SANDERS
COURT FROM WHICH APPEALED:  ADAMS COUNTY CIRCUIT COURT
ATTORNEY FOR APPELLANT:     OFFICE OF STATE PUBLIC DEFENDER
                            BY: HUNTER NOLAN AIKENS
ATTORNEY FOR APPELLEE:      OFFICE OF THE ATTORNEY GENERAL
                            BY: LAURA HOGAN TEDDER
DISTRICT ATTORNEY:          RONNIE LEE HARPER
NATURE OF THE CASE:         CRIMINAL - FELONY
DISPOSITION:                AFFIRMED IN PART; REVERSED AND
                            REMANDED IN PART - 06/16/2020
MOTION FOR REHEARING FILED:
MANDATE ISSUED:

**BEFORE J. WILSON, P.J., GREENLEE AND LAWRENCE, JJ.**

**GREENLEE, J., FOR THE COURT:**

¶1.     Victor Washington was convicted by a jury of burglary of a dwelling (Count I), aggravated assault (Count II), and armed robbery (Count III) in the Adams County Circuit Court. He was sentenced to serve three concurrent life sentences as a habitual offender under Mississippi Code Annotated section 99-19-83 (Rev. 2015). Washington now appeals, claiming that (I) the circuit court erred by failing to instruct the jury on the essential elements of aggravated assault, (II) his indictment did not allege the essential elements of burglary, (III) there was insufficient evidence to support his aggravated-assault conviction, and (IV)

there was insufficient evidence to support his armed-robbery conviction. We affirm on issues (II), (III), and (IV), but we reverse and remand for further proceedings consistent with this opinion as to issue (I), failure to properly instruct the jury.

**FACTS AND PROCEDURAL HISTORY**

¶2. Around 9:00 p.m. on the night of September 4, 2016, eighty-seven-year-old Kathryn Hoggatt[1] was in her home getting ready for bed when she heard a banging noise on the carport door. At the door, Hoggatt looked through the window curtain and saw Victor Washington, a man whom she did not recognize at the time. Washington stated to Hoggatt that he was there to "haul some stuff" away and that he was Brenda Tuesno's boyfriend.[2] Hoggatt responded to Washington that she did not need his help and turned to walk away. Washington then broke a glass pane on the carport door and entered the home. Hoggatt attempted to flee, but Washington was able to grab Hoggatt and force her to the ground. On the ground, Hoggatt noticed that Washington was carrying a knife. Hoggatt then escaped out of the carport door as Washington entered her bedroom.

¶3. Terri Burke, Hoggatt's neighbor, was at her house with her daughter, Kelli Jacobs, when she heard Hoggatt screaming for help and running toward their home. As Burke helped Hoggatt inside, Jacobs testified that she noticed blood "all over [Hoggatt's] arms and

---

[1] The filings and the record are inconsistent in the spelling of Kathryn Hoggatt's first name. In Washington's brief, her name is spelled "Kathryn." In the State's brief, it is spelled "Katherine." Other parts of the record use both spellings. We use "Kathryn" herein.

[2] Tuesno cleaned Hoggatt's house.

. . . feet." Jacobs then dialed 911, and Burke called Hoggatt's daughter.

¶4.     Hoggatt was transported to the hospital, where she received a tetanus shot and stitches in her foot. Investigator Joseph Belling, a crime scene investigator for the Natchez Police Department (NPD), was dispatched to the hospital. There, he interviewed Hoggatt. During the interview, Hoggatt exclaimed that she had cut her foot on broken glass. She also stated that she did not know Washington's name but that Washington used to drop Tuesno off at her home. After the interview, Investigator Belling photographed Hoggatt's injuries and went to Hoggatt's residence.

¶5.     Other officers had secured the scene by the time Investigator Belling reached Hoggatt's residence. At the scene, Investigator Belling noticed drops of blood and shattered glass scattered across the kitchen floor. He also saw blood inside Hoggatt's bedroom, specifically on and around Hoggatt's bedroom dresser. Investigator Belling collected some of the blood-stained evidence, including a piece of Hoggatt's carport door and a tank top that he found inside the dresser. He also took several swabs of blood. The items were sent to the Mississippi Forensics Laboratory for testing. After searching the scene, Investigator Belling returned to the hospital to take Hoggatt's DNA sample.

¶6.     With Hoggatt's disclosures and help from other officers, Investigator Belling developed Victor Washington as the primary suspect. On September 6, 2016, Investigator Belling presented Hoggatt a photo lineup using driver's license photos. After viewing Investigator Belling's lineup, Hoggatt narrowed the pretrial identification down to two

3

pictures but refused to conclusively answer because of the lack of clarity in the driver's license photos. The next day, Investigator Belling compiled a second photo lineup using booking photographs. Hoggatt then identified Washington. After Hoggatt identified Washington, Lieutenant Kenneth Stamply made the arrest. At the jail, Washington's DNA was taken.

¶7. Washington was subsequently indicted by a grand jury of burglary of a dwelling (Count I), aggravated assault (Count II), and armed robbery (Count III). The case was tried on January 25-26, 2017. The State presented nine witnesses. One of those witnesses was William Jones, a supervisor at the Mississippi Forensics Laboratory, who was received as an expert in the field of DNA analysis. Jones testified that the blood stains on Hoggatt's tank top were consistent with Washington's DNA profile. Following the State's case-in-chief, Washington moved for a directed verdict on Counts II and III. Both motions were denied. Washington then testified in his defense.

¶8. According to Washington, Tuesno asked him if he would help her break into Hoggatt's home and steal money. Washington testified that he had planned to "break the door" while Tuesno entered the home to "get the money." Washington then admitted that he broke Hoggatt's door on the night in question. Washington also testified that he cut his arm while breaking glass on the carport door. Washington denied entering Hoggatt's home. He also denied having a knife.

¶9. At the end of trial, the jury found Washington guilty on all three counts. Washington

4

was sentenced as a habitual offender under Mississippi Code Annotated section 99-19-83 to three concurrent life sentences to be served in the Mississippi Department of Corrections. Washington now appeals his convictions and sentences.

## DISCUSSION

¶10. Washington raises the following issues on appeal: (I) the circuit court erred by failing to instruct the jury on the essential elements of aggravated assault, (II) his indictment did not allege the essential elements of burglary, (III) there was insufficient evidence to support his aggravated-assault conviction, and (IV) there was insufficient evidence to support his armed-robbery conviction. We address these issues below, combining the last two issues for purposes of this discussion.

> **I. Whether the circuit court erred by failing to instruct the jury on the essential elements of aggravated assault.**

¶11. Washington argues that the circuit court erred by failing to instruct the jury on the essential elements of aggravated assault (Count II). In particular, he claims that the jury was instructed to find him guilty of aggravated assault if he attempted to cause "bodily injury" to Hoggatt, not "serious bodily injury" as required under Mississippi Code Annotated section 97-3-7(2)(a) (Rev. 2014). The State concedes this point in its brief. For the reasons addressed below, we agree with the parties that the instruction was inadequate and reverse the judgment of Washington's conviction and sentence on Count II and remand this case for a new trial on Count II.

¶12. "[T]he standard of review for the denial of jury instructions is abuse of discretion."

*Newell v. State*, 49 So. 3d 66, 73 (¶20) (Miss. 2010) (citing *Davis v. State*, 18 So. 3d 842, 847

(¶15) (Miss. 2009)).

¶13.    Washington was charged with one count of aggravated assault under Mississippi Code

Annotated section 97-3-7(2)(a).  That statute defines aggravated assault as:

> A person is guilty of aggravated assault if he (i) attempts to cause serious
> bodily injury to another, or causes such injury purposely, knowingly or
> recklessly under circumstances manifesting extreme indifference to the value
> of human life[] or (ii) attempts to cause or purposefully or knowingly causes
> bodily to another with a deadly weapon or other means likely to produce death
> or serious bodily harm . . . .

*Id.*

¶14.    Washington's indictment appears to follow the language of section 97-3-7(2)(a)(i).

The indictment reads:

> COUNT II: [O]n or about September 4, 2016, in and upon Kathryn Hoggatt,
> a person sixty-five (65) years or older, then and there did willfully, unlawfully,
> feloniously, and purposely attempt to make an assault by forcefully pushing the
> said Kathryn Hoggatt to the floor in broken glass, with the felonious intent of
> him, the said Victor Washington, *to willfully, unlawfully, feloniously and*
> *purposefully cause serious bodily injury to said Kathryn Hoggatt and did in*
> *fact cause serious bodily harm to the said Kathryn Hoggatt*[.]

(Emphasis added).

¶15.    At the end of trial, the circuit court gave Jury Instruction 12 (also labeled as Jury

Instruction S-2) as the aggravated-assault instruction.  That instruction reads:

> The defendant, VICTOR WASHINGTON, has been charged in Count II with
> the crime of Aggravated Assault against Kath[ryn] Hoggatt.
>
>     If you find from the evidence in this case beyond a reasonable doubt
> that:

6

1. VICTOR WASHINGTON, on or about September 4, 2016, in Adams County, Mississippi,

2. Did purposely, knowingly, and feloniously attempt to cause *bodily injury* to Kath[ryn] Hoggatt,

3. [B]y dragging her to the floor in broken glass;

then you shall find the defendant, VICTOR WASHINGTON, guilty of the crime of Aggravated Assault.

If the [S]tate has failed to prove any one or more of these elements beyond a reasonable doubt, then you shall find the defendant not guilty of Aggravated Assault.

(Emphasis added).

¶16. At the outset, we note that Washington's counsel failed to contemporaneously object to the State's proposed jury instruction (Jury Instruction 12). *See Caffie v. State*, 269 So. 3d 1203, 1205 (¶11) (Miss. Ct. App. 2018) ("To preserve a jury instruction issue on appeal, the defendant must make a specific objection to the proposed instruction to allow the [circuit] court to consider the issue."). But our supreme court has held that "instructing the jury on every element of the charged crime is so basic to our system of justice that it should be enforced by reversal in every case where inadequate instructions are given, regardless of a failure to object at trial." *Chesney v. State*, 165 So. 3d 498, 503 (¶10) (Miss Ct. App. 2015) (citing *Boyd v. State*, 47 So. 3d 121, 127 (¶22) (Miss. 2010)). "[T]he failure to submit to the jury the essential elements of a crime amounts to plain error." *Pollard v. State*, 932 So. 2d 82, 87 (¶11) (Miss. Ct. App. 2006) (citation omitted).

¶17. This Court examined this exact issue in *Brown v. State*, 225 So. 3d 1263, 1272 (¶32)

7

(Miss. Ct. App. 2016), *rev'd on other grounds*, 222 So. 3d 302 (Miss. 2017). In *Brown*, the aggravated-assault jury instruction listed "bodily injury" as an essential element rather than "serious bodily injury." *Id.* at 1273 (¶34). On appeal, we reviewed whether that discrepancy—failing to track the language of the aggravated-assault statute and constructively amending the defendant's indictment—mandated reversal and remand. *Id.* at (¶¶39-40). In determining that it did, this Court held, "the instructions were inadequate and did not require the jury to find that a serious bodily injury occurred as stated in the indictment." *Id.* at 1274 (¶39) (internal quotation marks omitted). The court continued: "The omission substantially altered the proof necessary for a conviction . . . and broadened the grounds upon which Brown was convicted." *Id.* at 1274 (¶39).

¶18.    Upon review, we come to the same conclusion. Like *Brown*, Jury Instruction 12 failed to instruct the jury on the "serious bodily injury" element of aggravated assault, as required by section 97-3-7(2)(a). It also varied from the language stated in his indictment. Therefore, because the excluded language "substantially altered the proof necessary for [an aggravated-assault] conviction[,]" and because the instruction broadened the grounds upon which Washington was convicted, we find that Jury Instruction 12 was inadequate and mandates reversal on this count. *Id.*; *see also Bell v. State*, 725 So. 2d 836, 855 (¶58) (Miss. 1998) ("A constructive amendment of the indictment occurs when the proof and instructions broaden the grounds upon which the defendant may be found guilty of the offense charged so that the defendant may be convicted without proof of the elements alleged by the grand jury in its

8

indictment."). As such, we find that Washington's aggravated-assault conviction (Count II) is reversed, and the charge is remanded for a new trial.

## II. Whether the indictment failed to allege the essential elements of burglary.

¶19. Washington argues that Count I of the indictment was defective because it failed to allege the essential elements of burglary under Mississippi Code Annotated section 97-17-23 (Rev. 2014). In particular, Washington contends that the indictment omitted "[the] crime [he] intended to commit at the time he broke and entered [Hoggatt's] house." In opposition, the State contends that the indictment was sufficient. We agree with the State.

¶20. "Whether an indictment is fatally defective is a question of law that we review de novo." *Bryant v. State*, 238 So. 3d 1213, 1216 (¶7) (Miss. Ct. App. 2018). "The rule . . . is that an indictment which states the statutory language is generally sufficient to inform the accused of the charge against him." *Colburn v. State*, 201 So. 3d 462, 469 (¶20) (Miss. 2016) (quoting *King v. State*, 580 So. 2d 1182, 1185 (Miss. 1991)). Our supreme court has held "that the ultimate test, when considering the validity of an indictment on appeal, is whether the defendant was prejudiced in the preparation of his defense." *Id.* (internal quotation mark omitted) (quoting *Byrom v. State*, 860 So. 2d 836, 867 (¶102) (Miss. 2003)).

¶21. The indictment satisfies common law requirements. Under *Brooks v. State*, 18 So. 3d 833, 838 (¶18) (Miss. 2009), "[a]n indictment is required to set out the elements of the crime charged." "To determine this, we examine the statute to ascertain if the language is specific enough to give notice of the act made unlawful, and exclusive enough to prevent its

application to any other acts other than those made unlawful." *Id.* (citing *Jackson v. State*, 420 So. 2d 1045, 1047 (Miss. 1982)). Washington's indictment alleged that (1) Washington willfully, unlawfully, feloniously and burglariously broke and entered Hoggatt's dwelling house; (2) with the felonious intent to commit a crime therein; and (3) did take, steal and carry away Hoggatt's personal property that she kept in said dwelling house. The indictment also explicitly directed Washington to Mississippi Code Annotated section 97-17-23.

¶22. Furthermore, the indictment complied with Uniform Civil Rule of Circuit and County Court Practice 7.06.[3] That rule reads:

> The indictment upon which the defendant is to be tried shall be a plain, concise and definite written statement of the essential facts constituting the offense charged and shall fully notify the defendant of the nature and cause of the accusation. Formal and technical words are not necessary in an indictment, if the offense can be substantially described without them. An indictment shall also include the following:
>
> 1. The name of the accused;
>
> 2. The date on which the indictment was filed in court;
>
> 3. A statement that the prosecution is brought in the name and by the authority of the State of Mississippi;
>
> 4. The county and judicial district in which the indictment is brought;
>
> 5. The date and, if applicable, the time at which the offense was alleged to have been committed. Failure to state the correct date shall not render the indictment insufficient;

---

[3] This rule has since been supplanted by Rule 14.1 of the Mississippi Rules of Criminal Procedure, which became effective July 1, 2017.

10

6.     The signature of the foreman of the grand jury issuing it; and

7.     The words "against the peace and dignity of the state."

URCCC 7.06.

¶23.    As noted, the indictment charged Washington with one count of burglary of a dwelling. The indictment read, in pertinent part:

> COUNT I: [O]n or about September 4, 2016, did willfully, unlawfully, feloniously and burglariously break and enter the dwelling house of Kathryn Hoggatt, a person sixty-five (65) years or older, with the felonious intent of him to commit a crime therein, and once therein the said Victor Washington, did take, steal and carry away certain United States currency, the personal property of Kathryn Hoggatt, found and kept in said dwelling house[.]

After reviewing the indictment and the requisites listed under Rule 7.06, we find that Washington's indictment was not defective as it fully notified him of the nature and cause of the accusation. *See Forkner v. State*, 277 So. 3d 946, 949 (¶11) (Miss. 2019) (finding a burglary indictment was not defective and that it complied with the requirements of Rule 7.06). It also informed Washington of the burglary count charged against him. *Colburn*, 201 So. 3d at 469 (¶20) (quoting *King*, 580 So. 2d at 1185).

¶24.    For the foregoing reasons, we cannot say that Washington's indictment was defective or that he was prejudiced in the preparation of his defense. We affirm on this issue.

### III.    Whether Washington waived his insufficiency-of-the-evidence claims.

¶25.    Washington argues insufficiency of the evidence for both aggravated assault (Count II) and armed robbery (Count III). Regarding aggravated assault, Washington attacks

whether he caused or attempted to cause serious bodily injury to Hoggatt. Regarding armed robbery, he contends that he did not take anything from the person or from the presence of Hoggatt. Upon review of the record and despite argument otherwise, we find that these arguments are waived.

¶26. Washington asserts that his convictions on Count II and III should be reversed and rendered because of an insufficiency of the evidence. *See Newell v. State*, 175 So. 3d 1260, 1267 (¶5) (Miss. 2015) (citing *Bush v. State*, 895 So. 2d 836, 843 (¶16) (Miss. 2005) ("If the appellate court determines that the State presented insufficient evidence of an element of [an] offense at trial, the proper remedy is for the appellate court to reverse and render." (internal quotation mark omitted), *overruled on other grounds by Little v. State*, 233 So. 3d 288, 292 (¶¶19-20) (Miss. 2017)).

¶27. It is well settled that "[a] challenge to the sufficiency of the evidence is reviewed in the light most favorable to the State, giving the State the benefit of all favorable inferences reasonably drawn from the evidence." *Ward v. State*, 285 So. 3d 136, 140 (¶14) (Miss. 2019) (internal quotation mark omitted) (quoting *Henley v. State*, 136 So. 3d 413, 415 (¶8) (Miss. 2014)). "This Court must reverse and render if the facts and inferences so considered point in favor of the defendant on *any* element of the offense with sufficient force that reasonable men could not have found beyond a reasonable doubt that the defendant was guilty." *Id.* (internal quotation mark omitted) (quoting *Henley*, 136 So. 3d at 415-16 (¶8)).

¶28. In a criminal trial, the defendant may challenge the sufficiency of the evidence by

12

moving for a directed verdict, requesting a peremptory instruction, or by moving for judgment notwithstanding the verdict (JNOV). *Pace v. State*, 242 So. 3d 107, 117 (¶24) (Miss. 2018) (citing *McClain v. State*, 625 So. 2d 774, 778 (Miss. 1993)). Here, Washington moved for a directed verdict after the State rested its case-in-chief and challenged the sufficiency of the evidence on Counts II and III. After hearing arguments from both sides, the circuit court denied both motions. Washington then proceeded to present his case-in-chief by testifying in his own defense. At the close of his case, Washington did not renew his motions for a directed verdict.

¶29. "To preserve the issue of denial of a directed verdict, the defense must move for a directed verdict at the close of the State's case-in-chief." *Woods v. State*, 242 So. 3d 47, 54 (¶24) (Miss. 2018) (quoting *Page v. State*, 990 So. 2d 760, 762 (¶9) (Miss. 2008)). As discussed in the above paragraph, Washington moved for a directed verdict at the close of the State's case-in-chief. However, "[w]hen the defendant proceeds with his case after the [S]tate rests and the court overrules the defendant's motion for a directed verdict, the defendant has waived the appeal of that directed verdict." *Holland v. State*, 656 So. 2d 1192, 1197 (Miss. 1995) (citing *Ezparaza v. State*, 595 So. 2d 418, 426 (Miss. 1992)). "Stated another way, if a defendant put on evidence in his own defense after the denial of his motion for directed verdict, he waives his challenge to the sufficiency of the State's evidence up to that point." *Woods*, 242 So. 3d at 54 (¶24) (internal quotation marks omitted) (citing *Robinson v. State*, 749 So. 2d 1054, 1058-59 (Miss. 1999)); *see also Seales v. State*, 90 So.

13

3d 37, 41 (¶22) (Miss. 2012) ("A defendant waives the appeal of an overruled motion for directed verdict made at the end of the State's case when the defendant chooses to go forward with his or her own case.").

¶30. Further, Washington did not request a peremptory instruction or move for a JNOV. The record shows that he filed one post-trial motion, but that motion requested permission to file an out-of-time appeal. The record is devoid of a motion for a new trial or a JNOV. *See Miss. State Highway Comm'n v. Gresham*, 331 So. 2d 925, 926 (Miss. 1976) ("[T]his Court has repeatedly held that an assignment of error in this Court that the verdict of the jury was excessive or that the evidence did not support the jury's finding will not be considered by this Court where no timely motion for a new trial was made in the trial court.").[4] "In the absence of a renewal of the directed verdict, a request for a peremptory instruction, or a motion for a judgment notwithstanding the verdict, [Washington] has waived the sufficiency error on appeal." *Holland*, 656 So. 2d at 1197 (citing *Griffin v. State*, 495 So. 2d 1352, 1353 (Miss. 1986)). Therefore, this issue is waived.

¶31. Regardless of waiver, the State presented sufficient evidence for both aggravated

---

[4] We note that Washington's notice of appeal states, "By this notice[,] Victor Washington[] appeals to the Supreme Court of Mississippi for the Judgment of Conviction, Sentencing Order and *Order Overruling Motion for New Trial or JNOV entered in this action*." (Emphasis added). Yet, the record lacks such motion, *and* Washington's brief fails to provide this Court with a record cite to such motion. *See* M.R.A.P. 28(a)(7) ("The argument shall contain the contentions of the appellant with respect to the issues presented, and reasons for those contentions, with citations to the authorities, statutes, and parts of the record relied on.").

14

assault and armed robbery. In regard to aggravated assault, there is evidence in the record showing that Washington possessed a knife. Other evidence exists that Washington forced Hoggatt to the floor and threatened her with a knife. Therefore, we find that had the jury been properly instructed, the State offered sufficient evidence to support Washington's aggravated-assault verdict. As to armed robbery, Washington argues in his brief that he took the money outside of Hoggatt's presence. Under *Reynolds v. State*, 227 So. 3d 428, 435 (¶31) (Miss. Ct. App. 2017), this Court reviewed a similar instance in which the defendant argued that he never took property from the victim's "person or presence." There, we found the defendant's argument to be without merit because "presence is not so much a matter of eyesight as it is one of proximity and control: the property taken in the robbery must be close enough to the victim and sufficiently under his control that, *had the latter not been subjected to violence or intimidation by the robber*, he could have prevented the taking." *Id.* at 437 (¶37) (brackets and internal quotation mark omitted) (quoting *Towner v. State*, 812 So. 2d 1109, 1113 (¶19) (Miss. Ct. App. 2002)). Here, Hoggatt testified that she routinely kept spare money in an envelope inside the undergarments drawer of her bedroom dresser. She also testified that she escaped Washington's attack at the time Washington entered her bedroom. After the incident, Hoggatt returned to her home and found that her bedroom dresser had been rummaged through and that the money was gone. Blood was also discovered on the dresser and clothes within it. A subsequent test revealed that blood stains on Hoggatt's tank top, which was removed from the bedroom dresser, matched Washington's

15

DNA profile. Thus, we find that although Hoggatt fled as Washington entered her bedroom, the State presented sufficient evidence that the money was taken from Hoggatt's "presence" within the meaning of our robbery statute. Washington's armed-robbery conviction is affirmed.

**CONCLUSION**

¶32. Because the jury instruction for Washington's aggravated-assault charge (Count II) was inadequate, we reverse the judgment of conviction and sentence for Count II and remand the case to the Adams County Circuit Court for a new trial on that count. We affirm Washington's convictions and sentences for Count I and Count III, as we find that the burglary indictment was not defective and that his arguments concerning insufficient evidence are waived.

¶33. **AFFIRMED IN PART; REVERSED AND REMANDED IN PART.**

**BARNES, C.J., CARLTON AND J. WILSON, P.JJ., WESTBROOKS, McDONALD, LAWRENCE, McCARTY AND C. WILSON, JJ., CONCUR.**