# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2016-KA-01507-SCT

*EVERETT MOORE a/k/a EVERETT S. MOORE*

*v.*

*STATE OF MISSISSIPPI*

| | |
|---|---|
| DATE OF JUDGMENT: | 10/03/2016 |
| TRIAL JUDGE: | HON. ROBERT P. CHAMBERLIN |
| TRIAL COURT ATTORNEYS: | ROBERT R. MORRIS |
| | JOHN D. WATSON |
| | LUKE PATRICK WILLIAMSON |
| | STACEY ALAN SPRIGGS |
| COURT FROM WHICH APPEALED: | DeSOTO COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANT: | OFFICE OF THE STATE PUBLIC DEFENDER |
| | BY: W. DANIEL HINCHCLIFF |
| |     GEORGE T. HOLMES |
| ATTORNEYS FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL |
| | BY: ABBIE E. KOONCE |
| |     JOE HEMLEBEN |
| DISTRICT ATTORNEY: | JOHN W. CHAMPION |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| DISPOSITION: | REVERSED AND REMANDED - 04/19/2018 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**EN BANC.**

**KITCHENS, PRESIDING JUSTICE, FOR THE COURT:**

¶1. A DeSoto County jury convicted Everett Moore of second-degree murder for shooting

and killing Norris Smith. The Circuit Court of DeSoto County, Mississippi, sentenced Moore

to thirty years' imprisonment. We reverse Moore's conviction and sentence and remand the

case for a new trial because the trial court committed reversible error in denying Moore's proposed circumstantial evidence jury instruction.

## FACTS AND PROCEDURAL HISTORY

¶2. On September 29, 2015, at 12:07 p.m., Officer Walter Medford of the Olive Branch Police Department responded to reports of an accident with injuries. Upon arrival at the scene, Officer Medford observed a white Nissan Altima that had collided with a building. Officer Medford testified that he "noticed a black male . . . in the driver's seat slumped over the arm rest" who was unresponsive and who "appeared to have a gun shot wound to his head." The window on the driver's side "was broken out." Investigator Roger Hutchins, who is Chief Inspector of the Detective Division of the DeSoto County Sheriff's Department, testified that a badge was found under the driver's seat of the vehicle which identified the victim as Norris Smith. Investigator Hutchins interviewed Smith's wife, who, "right off the bat," said that the shooter was Moore. Over defense counsel's hearsay objection, Investigator Hutchins testified that Smith's wife stated that "there had been an ongoing problem with Mr. Moore accusing Norris Smith, the victim, of having an affair with his wife."

¶3. Because the surrounding area where Smith's vehicle was located is heavily industrialized, the DeSoto County Sherriff's Department was able to obtain video surveillance footage from View, Inc.; Anda Pharmaceuticals; McKesson Pharmaceutical Distribution; Syncreon Security Technology; and Williams-Sonoma.[1] Detective Steve English of the Criminal Investigations Division of the DeSoto County Sheriff's Department

---

[1] Various surveillance videos were played for the jury.

2

testified that he assisted in gathering and reviewing all surveillance video footage pertinent to the investigation. According to Detective English, the Syncreon surveillance video footage from September 29, 2015, captured Norris Smith, who that same day had begun working at Syncreon Security Technology, coming out of the building where he worked during the lunch hour (some time between 11:38 p.m. and 12:00 p.m.) and getting into a Nissan Altima which belonged to his wife. The Syncreon surveillance video footage then showed Moore's white SUV pulling in behind Smith's vehicle. According to the surveillance video footage and the testimony of Detective English, at approximately 12:00 p.m., Moore exited his SUV and approached the driver's side of Smith's vehicle. Moore leaned on Smith's vehicle and appeared from the surveillance video to be "having some sort of conversation with [Smith]." After their brief conversation concluded, Moore returned to his SUV and "proceeded to drive west through the parking lot."

¶4.     Detective English also took a number of "screen captures of the images that are shown of the surveillance video." That series of screen captures—still photographs of images from various surveillance videos—was received in evidence as Exhibit 29. According to Detective English's interpretation, the screen captures show that Moore, driving west through the Syncreon parking lot, stopped his vehicle briefly. Smith's vehicle then exited Syncreon's parking lot onto Kirk Road. Detective English opined that, "[o]nce [Moore] sees that Mr. Smith has left out the opposite entrance, he starts proceeding to the west exit of Syncreon's property." After Smith's vehicle had driven past, according to Detective English, Moore then drove out of the Syncreon parking lot and onto Kirk Road.

¶5. Detective English testified that the screen captures from the Anda Pharmaceutical surveillance show "both vehicles side by side on Kirk Road . . . ." According to Detective English, the screen captures show Smith's "vehicle . . . coming into contact with the curb on the right and Mr. Moore . . . slowing down his actions, backing up behind the vehicle to allow Smith's vehicle to keep going forward . . . on Kirk Road." The next screen capture, Detective English testified, shows Smith's vehicle "bounce[] off of that right curb and [] driv[e] down the roadway uncontrollably as Mr. Moore is following behind."

¶6. Detective English described the Anda Pharmaceutical surveillance video, which he said showed "Mr. Smith's vehicle slowly come into the intersection almost striking [an] orange 18-wheeler [which] had a green light at the time. Mr. Smith's vehicle went through the intersection, over the curb and down the embankment where it came to a final rest at Prime Automotive."

¶7. Various witnesses testified about what they had observed. Ronnie Schuldt said that, as he was driving south on Polk Lane and approaching the intersection with Kirk Road, he was prevented from continuing through the intersection, despite having a green light: "I slowed down and stopped or almost stopped, and the car continued through the intersection heading west and drove up over the curb and then started down; and there was an embankment that goes down to the [Prime Automotive] building." Schuldt, who got out of his own vehicle and walked down the embankment to the driver's side of the car, stated that he saw an unresponsive person slumped over the console with an apparent head wound and that the driver's side window had been shattered. A Prime Automotive employee, Esau Fant,

4

testified that he heard two gunshots and watched a white Altima drive through the intersection and coast down to the Prime Automotive plant. He saw the broken glass and saw that the driver had been shot.

¶8. Jonathan Young, an employee of View, Inc., testified that he had turned left onto Polk Road off Kirk Road and "was almost rear ended by a white SUV." Young continued that the SUV, which had a Benton County tag, passed his vehicle in a turn lane and then ran a red light. Young testified that Moore, the defendant, was the person he observed driving the SUV.

¶9. Nine to ten hours after the shooting, Moore turned himself in to the police. After reading Moore's *Miranda*[2] rights to him and obtaining a written waiver, Investigator Hutchins interviewed Moore. The audio recorded interview was played for the jury. In the interview, Moore admitted having been in the Syncreon parking lot. Moore referenced a text message between his wife and Smith.

¶10. Dr. Brent Davis, a deputy chief medical examiner with the office of the Mississippi State Medical Examiner, who was tendered by the State and accepted by the trial court as an expert in forensic pathology, testified that his colleague, Dr. Lisa Funte, actually performed the autopsy but she was unavailable to testify. Dr. Davis testified that he had reviewed and concurred with Dr. Funte's conclusions following Smith's autopsy. He stated that, "[i]n our office, currently all homicides are reviewed and signed off on by each pathologist in the office." Dr. Davis testified that the cause of Smith's death was "[m]ultiple gunshot wounds"

---

[2] *Miranda v. Arizona*, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2 694 (1966).

and that the manner of Smith's death was "homicide." Moore did not object to any of Dr. Davis's testimony or evidence except for photographs the State offered through him that Moore argued were gruesome and would inflame the jury. The court admitted them, overruling Moore's objection.

¶11.   A DeSoto County grand jury had indicted Moore for murder but the jury found Moore guilty of second-degree murder. Moore sought a judgment notwithstanding the verdict (JNOV) or, in the alternative, a new trial, which the trial court denied. Moore was sentenced to a term of forty years, thirty years to be served in the custody of the Mississippi Department of Corrections and the remaining ten years to be served on post-release supervision. Moore timely filed a notice of appeal.

¶12.   Moore argues on appeal that: (1) the trial court erred by giving a second-degree murder instruction that was not supported by the evidence; (2) the trial court erred in refusing the circumstantial evidence jury instruction Moore had sought; (3) the trial court committed plain error by allowing a forensic pathologist to testify about an expert opinion which was not his own; and (4) the trial court erred by admitting hearsay evidence. We address only the dispositive question of whether the trial court erred in refusing Moore's tendered circumstantial evidence instruction.

## ANALYSIS

¶13.   The State produced no confession or eyewitness to the shooting. Moore proposed a circumstantial evidence jury instruction, but the trial court declined to give it. Moore argues on appeal that he was entitled to a circumstantial evidence instruction.

6

¶14. This Court reviews a grant or denial of jury instructions for abuse of discretion. *McInnis v. State*, 61 So. 3d 872, 875 (Miss. 2011). Further, jury instructions "must be read as a whole to determine [whether] they fairly announce the law, and they must be supported by evidence." *Id.* (internal citations omitted).

¶15. Moore contends that, under *Stringfellow v. State*, a circumstantial evidence instruction "'should be given only when the prosecution can produce neither eyewitnesses [nor] a confession to the offense charged.'" *See Stringfellow v. State*, 595 So. 2d 1320, 1322 (Miss. 1992). The State responds that Moore was not entitled to a circumstantial evidence jury instruction because it had adduced direct evidence of Moore's guilt:

> The video tape shows Moore's car and its relation to the victim's car at the exact place where the shots were fired as evidenced by the glass fragments and shell casings found at that location. An eye witness identified Moore as the one fleeing the scene and another eye witness described how the victim's car appeared to lose control and go off road until it came to rest against the side of a building.

¶16. But in *Burleson v. State*, this Court held that, "[w]here the State 'is without a confession and wholly without eyewitness testimony to the gravamen of the offense charged,' the defendant is entitled to an instruction requiring the jury to 'exclude every other reasonable hypothesis other than that of guilt before a conviction can be had.'" *Burleson v. State*, 166 So. 3d 499, 509 (Miss. 2015) (quoting *Mack v. State*, 481 So. 2d 793, 795 (Miss. 1985); *Pettus v. State*, 200 Miss. 397, 411, 27 So. 2d 536, 540 (1946)). This Court defined "gravamen" as the "'substantial point or essence of a claim, grievance, or complaint.'" *Burleson*, 166 So. 3d at 509 (quoting *McInnis*, 61 So. 3d at 876). Further, the Court recognized that "[d]irect evidence . . . 'must directly and not by inference implicate the

7

accused and not just show that there has been a crime.'" ***Burleson***, 166 So. 3d at 509 (quoting ***Price v. State***, 749 So. 2d 1188, 1194 (Miss. Ct. App. 1999)).

¶17.    In the present case, the State has produced neither Moore's confession nor an eyewitness to the gravamen of the offense charged. Here, the gravamen of the crime is the actual shooting of Smith. To remove this case from the circumstantial evidence realm, the State bore the burden of adducing evidence to show directly, and not merely by inference, that Moore shot and killed Smith. This is true, no matter how compelling the inference may be. The State claims that Moore's fingerprints on Smith's car, the video evidence of the vehicles, the broken glass and shell casing, the witness who observed Moore driving past him at a high rate of speed, and the other videos amount to direct evidence that Moore shot Smith. An inference that Moore shot Smith does arise from the evidence. But evidence that implicates the defendant by inference is circumstantial evidence, without regard to how persuasive the inference appears to be. Moreover, the sum of circumstantial evidence, however great it may be—and although often it is sufficient to sustain a conviction—never becomes direct evidence.

¶18.    The State argues that video evidence can constitute direct evidence of the crime, citing ***Golden v. State***. Golden was a cashier at a casino. ***Golden v. State***, 860 So. 2d 820, 821 (Miss. Ct. App. 2003). One evening, after Golden had left her post and exited the casino, "casino officials discovered that her cash drawer was short over $19,000." ***Id.*** At trial, the State presented video footage showing her taking the money from her drawer and delivering it to her sister. ***Id.*** at 823. The Mississippi Court of Appeals upheld her conviction:

8

"[v]ideotape evidence submitted to the jury of an accused's unlawful acts constitutes direct evidence." *Id.* In concluding that the videotape evidence was direct evidence, the Court of Appeals relied on *Haynes v. State*, in which this Court had affirmed a conviction for burglary where the defendant had hidden in the restroom of a Junior Food Mart in Aberdeen, Mississippi, "with the express purpose of stealing from the store once it closed." *Haynes v. State*, 744 So. 2d 751 (Miss.1999). This Court affirmed Haynes's conviction and sentence because, "[i]n addition to the testimony of the officers who arrested Haynes, the jury was also presented with a videotape of Haynes dragging a garbage bag full of stolen goods around the store." *Id.* at 753.

¶19.    But, in both *Golden* and *Haynes*, surveillance video had captured the nefarious misdeeds of the parties. In those cases, the video footage captured the gravamen of the crimes as they were being committed. The circumstantial evidence in the present case, albeit copious, does not reach beyond the realm of the inferential. The surveillance videos here showed only Moore's encounter with Smith in the Syncreon parking lot and the close proximity of Moore's vehicle to Smith's just before Smith's vehicle careened out of control. An inference arises from this circumstantial evidence that Smith did, in fact, shoot Moore. But inferences do not amount to direct evidence.

¶20.    Because the State adduced no direct evidence of Moore's guilt, the trial court's refusal of Moore's sought circumstantial evidence jury instruction was an abuse of discretion. Accordingly, we reverse Moore's conviction and sentence and remand the case to the Circuit Court of DeSoto County for a new trial.

¶21. The dissent calls for the abolition of the circumstantial evidence jury instruction. But as the dissent recognizes, that view has been rejected by a majority of this Court no fewer than five times. *See Burleson v. State*, 166 So. 3d 499, 514 (Miss. 2015) (Pierce, J., dissenting); *Stringfellow v. State*, 595 So. 2d 1320, 1322 (Miss. 1992) (Pittman, J., concurring); *King v. State*, 580 So. 2d 1182, 1192 (Miss. 1991) (Banks, J., concurring) *Montgomery v. State*, 515 So. 2d 845, 849 (Miss. 1987) (Robertson, J., concurring); *Mack v. State*, 481 So. 2d 793, 796 (Miss. 1985) (Robertson, J., concurring). And "'[a] former decision of this court should not be departed from[] unless the rule therein announced is not only manifestly wrong, but mischievous.'" *McDaniel v. Cochran*, 158 So. 3d 992, 1000 (Miss. 2014) (quoting *Caves v. Yarbrough*, 991 So. 2d 142, 151 (Miss. 2008)). *See Stone v. Reichman-Crosby Co.*, 43 So. 2d 184, (Miss. 1949) ("'[I]t is the manifest policy of our courts to hold the doctrines of stare decisis subordinate to legal reason and to depart therefrom when such departure is necessary to avoid the perpetuation of pernicious error.'") (quoting 14 Am. Jur. 2d § 124).

¶22. This Court long has stood by the precept that, "[w]here the State 'is without a confession and wholly without eyewitness testimony to the gravamen of the offense charged,' the defendant is entitled to an instruction requiring the jury to 'exclude every other reasonable hypothesis other than that of guilt before a conviction can be had.'" *Burleson v. State*, 166 So. 3d 499, 509 (Miss. 2015) (quoting *Mack v. State*, 481 So. 2d 793, 795 (Miss. 1985); *Pettus v. State*, 200 Miss. 397, 411, 27 So. 2d 536, 540 (1946)). Nevertheless, the dissent calls for its abolition and argues that the rule's application is mischievous. It

10

undergirds this claim by opining that the trial court's failure to give a circumstantial evidence instruction is subject to a harmless error analysis.

¶23. The dissent argues that, "the United States Supreme Court says mandatory reversal applies only to a very limited class of fundamental constitutional errors—not one of which is in play here." Diss. Op. ¶ 47 (citing *Neder v. United States*, 527 U.S. 1, 7, 119 S. Ct. 1827, 144 L. Ed. 2d 35 (1999) (holding that the failure to instruct the jury on every element of the crime charged is subject to harmless error analysis). But in *Neder*, the United States Supreme Court "held it to be harmless error when the defendant was found guilty of tax crimes despite the fact that the jury was not instructed on one element of the offense—the materiality of false statements made by the defendant." *Harrell v. State*, 134 So. 3d 266, 271 (Miss. 2014) (citing *Neder*, 527, U.S. at 6-7, 10). The *Neder* Court was not asked whether failure of the trial court to give a circumstantial evidence instruction in a circumstantial evidence case could be subject to harmless error analysis.

¶24. In *Stringfellow v. State*, 595 So. 2d 1320, 1322 (Miss. 1992), this Court declined to abolish the circumstantial evidence instruction, holding that, while "[a] number of other jurisdictions have abolished the circumstantial evidence instruction, [] we are of the opinion that there are still times and cases where, to secure protection of the accused's right to a fair trial, the instruction should be given." The dissent's statement that the *Stringfellow* majority "dodged the issue" of harmless error misrepresents that Court's holding. Diss. Op. ¶ 49.

¶25. The *Stringfellow* Court declined to apply harmless error and held that the circumstantial evidence instruction should have been given "to secure protection of the

accused's right to a fair trial . . . ." ***Stringfellow***, 595 So. 2d at 1322. So it is not accurate, as the dissent avers, that our cases apply "circular reasoning" and they deduce that "the failure to give a circumstantial-evidence instruction must be harmful because a majority of this Court insists circumstantial-evidence instructions are required." Diss. Op. ¶ 49.

¶26.    Circumstantial evidence instructions exist to ensure that, in cases in which the prosecution is without either a confession from the defendant or an eyewitness to the gravamen of the offense charged, a fair trial is had. A set of facts could arise in which this Court finds the trial court's failure to give a circumstantial evidence jury instruction in a circumstantial evidence case to have been harmless error. But today's case does not present such a fact pattern and we decline to speculate about a hypothetical scenario.

¶27.    The dissent continues: "[T]he [United States] Supreme Court says circumstantial-evidence instructions are *unnecessary* if the jury is appropriately instructed on the State's burden of proof—'If the jury is convinced beyond a reasonable doubt, we can require no more.'" Diss. Op. ¶ 55. (quoting ***Holland v. United States***, 348 U.S. 121, 140, 75 S. Ct. 127, 99 L. Ed. 150 (1954)). But it does not follow that United States Supreme Court precedent compels state courts "to follow the minimum standard that the federal government has set for itself. We are empowered by our state constitution to exceed federal minimum standards of constitutionality . . . ." ***Downey v. State***, 144 So. 3d 146, 151 (Miss. 2014) (holding that "[b]ecause . . . Downey invoked her right to counsel . . . and . . . her ***Miranda*** rights were violated when the interrogating officer continued his questioning without having her attorney

12

present, the trial judge abused his discretion by denying Downey's motion to suppress . . . .").

¶28.    In cases in which the State has neither a confession from the defendant nor an eyewitness to the gravamen of the offense charged, it can hardly be said that requiring the State to exclude every *reasonable* hypothesis consistent with innocence is a more onerous burden. Circumstantial evidence benefits the State by allowing the jury to find the defendant guilty beyond a reasonable doubt by inference, as long as the State's evidence excludes every *reasonable* hypothesis consistent with innocence. Able prosecutors know that a solid circumstantial evidence case is to be preferred over one with an abundance of inebriated, or otherwise dubious, eyewitnesses, or one in which there is a shaky confession of questionable veracity or uncertain admissibility.

¶29.    The dissent argues that the failure to instruct the jury in this case amounted to harmless error because the evidence against Moore was overwhelming. Diss. Op. ¶ 56. The dissent goes on to accuse the Court of ignoring the harmless error standard: "To completely duck these facts and the overwhelming evidence of Moore's guilt, giving absolutely no analysis of any resulting harm from excluding the instruction, rings hollow and very dismissive." Diss. Op. ¶ 36.

¶30.    The jury was instructed on first degree murder, second degree murder, and manslaughter. The jury did not find Moore guilty beyond a reasonable doubt of first degree murder.[3] Instead, the jury found Moore guilty beyond a reasonable doubt of second degree

---

[3] Mississippi Code Section 97-3-19(1)(a) defines "first-degree murder" as: "[t]he killing of a human being without the authority of law by any means or in any manner . . .

13

murder.[4] We decline to hypothesize whether the failure of the trial court to give a circumstantial evidence instruction contributed to the jury's finding Moore guilty of a lesser crime than that charged in the indictment, first degree murder. Clearly, the jury was not convinced that the State had proven, beyond a reasonable doubt, that the shooting was "done with deliberate design to effect" Smith's death.

## CONCLUSION

¶31.    Because the trial court erred by denying Moore the circumstantial evidence jury instruction to which he was entitled, we reverse his conviction and remand the case to the Circuit Court of DeSoto County for a new trial.

¶32.    **REVERSED AND REMANDED.**

      **WALLER, C.J., KING, COLEMAN AND ISHEE, JJ., CONCUR. MAXWELL, J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY RANDOLPH, P.J., AND BEAM, J. CHAMBERLIN, J., NOT PARTICIPATING.**

      **MAXWELL, JUSTICE, DISSENTING:**

¶33.    The majority throws out the jury's guilty verdict and renders what is tantamount to an automatic reversal of Moore's second degree murder conviction based solely on a harmless

---

[w]hen done with deliberate design to effect the death of the person killed, or of any human being . . . ." Miss. Code Ann. § 97-3-19(1)(a) (Rev. 2014).

    [4] Mississippi Code Section 97-3-19(1)(b) defines "second-degree murder" as:

       The killing of a human being without the authority of law by any means or in
       any manner . . . [w]hen done in the commission of an act eminently dangerous
       to others and evincing a depraved heart, regardless of human life, although
       without any premeditated design to effect the death of any particular
       individual . . . .

Miss. Code Ann. § 97-3-19(1)(b) (Rev. 2014).

instructional error. With respect for the majority, I find this approach is flawed, manifestly wrong, and results in a mischievous outcome.[5] Because there is no reversible error, I respectfully dissent.

¶34. First, the majority acts on a completely false premise—that there is an "*arguably stricter burden of proof placed upon the state in circumstantial evidence cases.*"[6] This is simply untrue. In reality, as hopefully we can all agree, the State's constitutionally required burden of proof in *all* criminal cases is the same—beyond a reasonable doubt.[7]

¶35. Second, mandating what is essentially automatic reversal for an instructional error, which has zero effect on a jury's verdict is illogical and impractical. Until today, this Court has consistently and very clearly "*rejected the proposition that the failure to give [a circumstantial evidence] instruction can be harmless error.*"[8] But the majority now concedes this stringent view was incorrect. It now admits that failure to give a circumstantial-evidence instruction—just like any other nonstructural trial error—can be subject to harmless-error analysis.[9] While I do commend the majority for recognizing our precedent requiring automatic reversal was wrong, it appears the majority's newfound appreciation of the

---

[5] *See **Forest Prod. & Mfg. Co. v. Buckley**, 107 Miss. 897, 899, 66 So. 279, 280 (1914).

[6] ***Fisher v. State***, 481 So. 2d 203, 214 (Miss. 1985) (emphasis added).

[7] *E.g., **Burleson v. State***, 166 So. 3d 499, 511-12 (Miss. 2015) (applying beyond-a-reasonable-doubt standard to a circumstantial-evidence case).

[8] ***Id.***, 166 So. 3d at 511 (citing ***McInnis v. State***, 61 So. 3d 872, 875 n.5 (Miss. 2011); ***Stringfellow v. State***, 595 So. 2d 1320, 1322 (Miss. 1992)).

[9] Maj. Op. ¶ 24.

harmless error doctrine is, in application, little more than lip service. I say this because instead of explaining why and to what extent Moore was harmed by the lack of a circumstantial-evidence instruction, the majority simply decrees "today's case does not present such a fact pattern."[10] As the majority puts it, "we decline to speculate about a hypothetical scenario."[11]

¶36. But with respect for the majority—this Court is not facing a hypothetical scenario. This is a real murder case. And a unanimous, twelve-member jury found Moore guilty of murdering Smith—a real person. To completely duck these facts and the overwhelming evidence of Moore's guilt, giving absolutely no analysis of any resulting harm from excluding the instruction, rings hollow and very dismissive. It is not the way this Court or any other American appellate court applies harmless-error review. And I do not join in this approach. I would instead apply our traditional harmless-error standard, under which we examine whether the defendant was harmed sufficiently to overturn the jury's verdict.

¶37. A third truth is that the United States Supreme Court, every single federal court, and the vast majority of State courts, agree that refusal to give a circumstantial-evidence instruction is not even error at all. And numerous Justices on this Court have heavily

---

[10] *Id.* at ¶ 26.

[11] *Id.*

criticized and called for the abolishment of circumstantial-evidence instructions[12]—for good reason.

¶38. The bottom line is that Mississippi law says "[c]ircumstantial evidence is entitled to the same weight and effect as direct evidence[.]"[13] So if a jury is properly instructed on the State's burden of proof, as it was here, no more stringent instruction is required.[14]

¶39. For these reasons, I would affirm Moore's conviction and sentence.

### I. The Justification for Mandating a Circumstantial-Evidence Instruction is Based on a False Premise

¶40. Without question, this Court's current view of circumstantial-evidence instructions is based on a completely false premise—that there is an "*arguably stricter burden of proof placed upon the state in circumstantial evidence cases.*" ***Fisher v. State***, 481 So. 2d 203, 214 (1985) (emphasis added) (citing ***Flanagin v. State***, 473 So. 2d 482, 485 (Miss. 1985); ***Hester v. State***, 463 So. 2d 1087, 1093-94 (Miss. 1985)). This notion is manifestly wrong.

¶41. In truth, there is just one burden of proof in all criminal cases. The State's burden is to prove the defendant guilty beyond a reasonable doubt. More than twenty-five years ago,

---

[12] Justice Pierce noted "previous members of this Court have recognized and expressed[] this instruction is a mere restatement of the reasonable-doubt burden of proof and serves no real purpose, and I am in accord with those who have called for its abolition." ***Burleson***, 166 So. 3d at 514 (Pierce, J., dissenting) (citing ***Mack v. State***, 481 So. 2d 793, 796 (Miss. 1985) (Robertson, J., concurring); ***Montgomery v. State***, 515 So. 2d 845, 849 (Miss. 1987) (Robertson, J., concurring); ***King v. State***, 580 So. 2d 1182, 1192 (Miss. 1991) (Banks, J., concurring); ***Stringfellow***, 595 So. 2d at 1322 (Pittman, J., concurring)).

[13] ***Cardwell v. State***, 461 So. 2d 754, 760 (Miss. 1984).

[14] ***Holland v. United States***, 348 U.S. 121, 139-40, 75 S. Ct. 127, 137, 99 L. Ed. 150 (1954). *Cf. **Stringfellow***, 595 So. 2d at 1322 (acknowledging beyond-a-reasonable-doubt instruction is no less stringent than a circumstantial-evidence instruction).

Justice Banks pointed out the flawed logic of claiming a stricter, more enhanced burden of proof in circumstantial-evidence cases:

> The concept of proof beyond a reasonable doubt is fully embodied in our U.S. Constitution. **In Re Winship**, 397 U.S. 358, 90 S. Ct. 1068, 25 L. Ed. 2d 368 (1970). In **Winship**, the Supreme Court held that the reasonable doubt standard was constitutionally required under the Due Process Clause. In making this holding, the Court reviewed: the acceptance of the practice in common law jurisdictions, the long use of the standard by the Court, and the need to reduce the risk of convicting the innocent. 397 U.S. at 361-64, 90 S. Ct. at 1071-73, 25 L. Ed. 2d at 373-75.
>
> *No court, however, has found a constitutional basis for a heightened burden of proof in circumstantial evidence cases. Whether proof is made by circumstantial or by direct evidence, the state must show guilt beyond a reasonable doubt.*

**King v. State**, 580 So. 2d 1182, 1193 (Miss. 1991) (Banks, J concurring) (emphasis added).

Justice Pierce also noted this fallacy, lamenting that "the most problematic aspect of the [circumstantial-evidence] instruction is that the additional 'reasonable hypothesis' language suggests to the jury that the State is held to a distinct and higher burden of proof in cases lacking a confession from the defendant or eyewitness testimony to the gravamen of the offense." **Burleson v. State**, 166 So. 3d 499, 517 (Miss. 2015) (Pierce, J., dissenting).

¶42. Again, it is without question that the State's burden of proof is *not* raised when circumstantial evidence is admitted against the accused. *See* **Jackson v. Virginia**, 443 U.S. 307, 315, 99 S. Ct. 2781, 2787, 61 L. Ed. 560 (1979). As "long as the court instructs the jury on the necessity that the defendant's guilt be established beyond a reasonable doubt, the Constitution does not require that any particular form of words be used in advising the jury of the government's burden of proof." **Burleson**, 166 So. 3d at 517 (Pierce, J., dissenting)

18

(quoting *Victor v. Nebraska*, 511 U.S. 1, 5, 114 S. Ct. 1239, 1243, 127 L. Ed. 2d 583 (1993)).

¶43.   While the majority of this court apparently prefers and demands a higher burden of proof in circumstantial-evidence-based criminal cases—I cannot join them.  Because the Constitution does not recognize and no American court utilizes a "beyond, beyond a reasonable doubt" standard in criminal cases, this false premise should be departed from.[15]

## II.   *Any Instructional Error Was at Most Harmless*

### A.   *Harmless-Error Review Applies to Nonstructural Errors*

¶44.   Furthermore, in the majority's view, the trial judge's failure to correctly sift through the eighteen different tests[16] for discerning if a circumstantial-evidence instruction is needed was not just error but *requires* reversal.  The majority reaches this conclusion—undoing the jury's guilty verdict—without even asking if the purported error had any effect whatsoever on the verdict.

¶45.   Instead, it says "[a] set of facts could arise in which this Court finds the trial court's failure to give a circumstantial evidence jury instruction in a circumstantial evidence case to

---

[15]  I do not take this position lightly.  I wholeheartedly agree with and abide by the doctrine of stare decisis, under which, "[a] former decision of this court should not be departed from, unless the rule therein announced is not only manifestly wrong, but mischievous." *Forest Prod. & Mfg. Co.*, 107 Miss. at 899, 66 So. at 280.

[16] Justice Robertsons's "[c]areful, but not exhaustive, research reveal[ed] . . . no less than eighteen articulations of the test for determining whether and when the circumstantial evidence burden of proof rule should apply." *Montgomery*, 515 So. 2d at 849-850 (Robertson, J., concurring).  Apparently, the majority adds a nineteenth articulation in this case—any inference, no matter how compelling, makes the evidence merely circumstantial.

have been harmless error. But today's case does not present such a fact pattern and we decline to speculate about a hypothetical scenario." Maj. Op. ¶ 26. Again, this is not a hypothetical. And merely saying harmless-error review *may* be appropriate in some circumstantial-evidence cases, but not this one, is not engaging in harmless-error review. It is conceding our past standard is wrong, but still employing it.

¶46. This methodology runs afoul of how this Court, and all other American appellate courts, typically review nonstructural, preserved trial errors. In fact, it is totally opposite. The United States Supreme Court has long recognized that "'[a] defendant is entitled to a fair trial but not a perfect one,' for there are no perfect trials." *Brown v. United States*, 411 U.S. 223, 231, 93 S. Ct. 1565, 1570, 36 L. Ed. 2d 208 (1973) (quoting *Bruton v. United States*, 391 U.S. 123, 135, 88 S. Ct. 1620, 1627, 20 L. Ed. 2d 476 (1968)). Any lawyer who has ever tried a jury trial, and any judge who has ever presided over one, will agree with this notion. That is why this Court refuses to "set[] aside convictions for small errors or defects that have little, if any, likelihood of having changed the result of the trial." *Smith v. State*, 136 So. 3d 424, 435 (Miss. 2014) (quoting *Chapman v. California*, 386 U.S. 18, 22, 87 S. Ct. 824, 827, 17 L. Ed. 2d 705 (1967)). For nonstructural errors, like the one before us, we employ harmless-error analysis. *Brown v. State*, 995 So. 2d 698, 704 (Miss. 2008) (citing *Washington v. Recuenco*, 548 U.S. 212, 218, 126 S. Ct. 2546, 2551, 165 L. Ed. 2d 466 (2006)). *See also Williams v. State*, 991 So. 2d 593, 599 (Miss. 2008) (quoting *Tran v. State*, 962 So. 2d 1237, 1247 (Miss. 2007)) ("Harmless-errors are those which in the setting of a particular case are so unimportant and insignificant that they may, consistent with the

20

Federal Constitution, be deemed harmless, not requiring the automatic reversal of the conviction.").

¶47. This method of appellate review is not novel. Nor is it of recent vintage. Rather, "[p]erforming harmless-error review is commonplace in appellate courts . . . ." *Gillett v. State*, 148 So. 3d 260, 266 (Miss. 2014). It is widely utilized by all appellate courts, state and federal, and is even codified in Mississippi's procedural rules.[17] And in addition to typical trial errors, the United States Supreme Court, and all appellate courts, including this one, even apply harmless-error review to a host of Constitutional-rights violations.[18] Indeed, the United States Supreme Court says mandatory reversal applies only to a very limited class

---

[17] Under Rule 30.1(c) of the Mississippi Rules of Criminal Procedure, to be reversible, a trial-court error must be prejudicial. *See* M.R.Cr.P. 30.1(c) ("If no prejudicial error be found, the circuit court [sitting as appellate court] shall affirm and enter judgment in like manner as affirmances in the Supreme Court."). Similarly, in civil trials:

> No error in either the admission or the exclusion of evidence and no error in any ruling or order or in anything done or omitted by the court or by any of the parties is ground for granting a new trial or for setting aside a verdict or for vacating, modifying, or otherwise disturbing a judgment or order, unless refusal to take such action appears to the court inconsistent with substantial justice. The court at every stage of the proceeding must disregard any error or defect in the proceeding which does not affect the substantial rights of the parties.

M.R.Civ.P. 61.

[18] While "there are some constitutional rights so basic to a fair trial that their infraction can never be treated as harmless error," *Chapman*, 386 U.S. at 23, 87 S. Ct. at 827-28, "most constitutional errors can be harmless." *Neder v. United States*, 527 U.S. 1, 8, 119 S. Ct. 1827, 1833, 144 L. Ed. 2d 35 (1999) (citing *Arizona v. Fulminante*, 499 U.S. 279, 306, 111 S. Ct. 1246, 113 L. Ed. 2d 302 (1991)).

of fundamental constitutional errors—not one of which is in play here.[19] *Neder v. United States*, 527 U.S. 1, 7, 119 S. Ct. 1827, 1833, 144 L. Ed. 2d 35 (1999) (citing *Arizona v. Fulminante*, 499 U.S. 279, 309, 111 S. Ct. 1246, 1265, 113 L. Ed. 2d 302 (1991)).

¶48. Because here there is no structural error, the only logical standard of review is harmless-error review. This was our approach in *States v. State*, 88 So. 3d 749, 758 (Miss. 2012), where we held an erroneous jury instruction (flight instruction) was harmless error. And we have applied the harmless-error doctrine to a slew of other trial errors and constitutional violations.[20]

---

[19] Such "structural errors"—as they are called—implicate basic protections, without which "a criminal trial cannot reliably serve its function as a vehicle for determination of guilt or innocence, and no criminal punishment may be regarded as fundamentally fair." *Fulminante*, 499 U.S. at 310, 111 S. Ct. at 1265 (quoting *Rose v. Clark*, 478 U.S. 570, 577-78, 106 S. Ct. 3101, 3106, 92 L. Ed. 2d 460 (1986)). The United States Supreme Court has found structural errors, however, only in a very limited class of cases: *Sullivan v. Louisiana*, 508 U.S. 275, 113 S. Ct. 2078, 124 L. Ed. 2d 182 (1993) (an erroneous reasonable-doubt instruction); *Vasquez v. Hillery*, 474 U.S. 254, 106 S. Ct. 617, 88 L. Ed. 2d 598 (1986) (unlawful exclusion of members of the defendant's race from a grand jury); *Waller v. Georgia*, 467 U.S. 39, 104 S. Ct. 2210, 81 L. Ed. 2d 31 (1984) (denial of the right to a public trial); *McKaskle v. Wiggins*, 465 U.S. 168, 104 S. Ct. 944, 79 L. Ed. 2d 122 (1984) (denial of the right to self-representation at trial); *Gideon v. Wainwright*, 372 U.S. 335, 83 S. Ct. 792, 9 L. Ed. 2d 799 (1963) (the total deprivation of the right to counsel at trial); and *Tumey v. Ohio*, 273 U.S. 510, 47 S. Ct. 437, 71 L. Ed. 749 (1927) (a biased judge).

[20] Harmless-error review was applied in the following cases: *Avery v. State*, 119 So. 3d 317, 320 (Miss. 2013) (failure to sequester a witness); *Young v. State*, 99 So. 3d 159, 163 (Miss. 2012) (denial of impeachment of a hostile witness); *Conners v. State*, 92 So. 3d 676, 684 (Miss. 2012) (Confrontation-Clause violation); *White v. State*, 48 So. 3d 454, 458 (Miss. 2010) (admission of hearsay); *Pitchford v. State*, 45 So. 3d 216, 235 (Miss. 2010) (prosecutorial misconduct); *Walton v. State*, 998 So. 2d 971, 976 (Miss. 2008) (admission of statements in violation of *Miranda v. Arizona*, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966)).

¶49.   I do recognize the *Stringfellow* majority refused to find harmless error.  *Stringfellow v. State*, 595 So. 2d 1320, 1322 (Miss. 1992).  But their refusal is as puzzling as the majority's here.  In *Stringfellow*, there was zero discussion of how the error substantially affected the verdict.[21]  The *Stringfellow* majority simply dodged the issue.  *See id.* (rationalizing that, because "it is the conclusion of the majority that if the instruction is to be retained, it should have been given in this case").  The same analytical hole also is found in later cases that rely on *Stringfellow*'s no-harmless-error holding, specifically *Burleson* and *McInnis*, which both apply the same circular reasoning—that the failure to give a circumstantial-evidence instruction must be harmful because a majority of this Court insists circumstantial-evidence instructions are required.  *Burleson*, 166 So. 3d at 511; *McInnis v. State*, 61 So. 3d 872, 875 n.5 (Miss. 2011).  The majority here repeats this same chorus—generally insisting the instruction is necessary "to secure protection of the accused's right to a fair trial . . . ."  Maj. Op. ¶ 24 (quoting *Stringfellow*, 595 So. 2d at 1322).

¶50.   But if a fair trial is really the majority's goal, how can it say the trial was unfair when Mississippi courts recognize "[c]ircumstantial evidence is entitled to the same weight and effect as direct evidence"?  *Cardwell v. State*, 461 So. 2d 754, 760 (Miss. 1984).  Surely its answer is not by raising the bar and imposing a "stricter" burden of proof than the constitutionally mandated reasonable-doubt standard?  Or creating a new "because we say so" take on harmless-error review?

---

[21] In fact, the opinion suggests the opposite—there was no harm.  *See Stringfellow*, 595 So. 2d at 1332 (recognizing that a beyond-a-reasonable-doubt instruction is "practically speaking, no less stringent than a circumstantial[-evidence] instruction").

23

¶51. Because the majority's approach is not legally sound and is not how this Court, or any appellate court, analyzes nonstructural errors, we should instead apply traditional harmless-error analysis.

B. *Harmless-Error Review and the Evidence*

¶52. Utilizing harmless-error review, it cannot reasonably be argued that giving a circumstantial-evidence instruction would have, in "any[] likelihood . . . changed the result of the trial." *Smith*, 136 So. 3d at 435 (quoting *Chapman*, 386 U.S. at 22).

¶53. First, the evidence supporting the verdict was overwhelming. Video evidence, eyewitness testimony, forensic evidence, and Moore's own damning actions doomed him. The day of the shooting, Moore had accused Smith of having an affair with his wife. Moore traveled to Smith's workplace. And a business surveillance video captured Moore sitting in his SUV in the parking lot awaiting Smith. It showed the confrontation between Moore and Smith, then caught Moore climbing into his vehicle and Smith his. It shows Moore's SUV rapidly following Smith's out of the parking lot. Eyewitnesses saw Moore's vehicle pull next to Smith's, then Smith's vehicle careen out of control. Another witness heard the fatal gunshots ring out. After the shooting, Moore "picked up speed and ran the red light." In doing so, he almost crashed into another vehicle. Once Smith's vehicle stopped, Smith's dead body confirmed what everyone had just seen and heard—Moore had pulled alongside Smith and shot him to death. Additionally, when Moore turned himself in, eight hours later, he was driving a different vehicle and had changed into different clothes. Officers determined the interior and exterior of the SUV Moore had driven in the video had just been

24

wiped down with cleaning agents. Officers also found large jugs of cleaning materials in Moore's SUV.

¶54. Simply put, in light of this overwhelming evidence of guilt, the lack of a circumstantial-evidence instruction was insignificant. Still, the majority chides this writer for conducting harmless-error review, analyzing the overwhelming evidence of Moore's guilt, and considering the jury instructions as a whole. But that is exactly how this Court reviews nonstructural errors, even where juries have found defendants guilty of lesser offenses. *See, e.g., Porter v. State*, 551 So. 2d 104, 105 (Miss. 1989) (holding evidentiary error was harmless in light of overwhelming evidence of guilt, which was sufficient to convict of lesser-included offense of manslaughter); *Kelly v. State*, 463 So. 2d 1070, 1074 (Miss. 1985) (applying harmless-error review to a clearly erroneous manslaughter instruction and holding omission was harmless based on the evidence). *See also Newell v. State*, 49 So. 3d 66, 73-74 (Miss. 2010) (holding there is no reversible error if all "all instructions taken as a whole fairly, but not necessarily perfectly," announce the applicable law).

¶55. Furthermore, the jury was properly instructed on the burden of proof. And the Supreme Court says circumstantial-evidence instructions are *unnecessary* if the jury is appropriately instructed on the State's burden of proof—"If the jury is convinced beyond a reasonable doubt, we can require no more." *Holland v. United States*, 348 U.S. 121, 140, 75 S. Ct. 127, 138, 99 L. Ed. 150 (1954). This Court has long recognized that a beyond-a-reasonable-doubt instruction meets the same stringent constitutional bar as a circumstantial-evidence instruction. *Stringfellow*, 595 So. 2d at 1322 (acknowledging that "an instruction

25

to a jury that it must find an accused guilty beyond reasonable doubt is, practically speaking, no less stringent than a circumstantial instruction requiring the jury to find the accused's guilt beyond a reasonable doubt and 'to the exclusion of every reasonable hypothesis other than that of guilt'"). So there is no negative impact on a jury's verdict when a beyond-a-reasonable-doubt instruction is given, as it was here.

¶56. For these reasons, based on the giving of a reasonable-doubt instruction and the overwhelming evidence of Moore's guilt, there was no substantive harm.

> **III. Because the Law Makes No Distinction Between "Direct" and "Circumstantial" Evidence, a Separate Circumstantial-Evidence Instruction Should Not Be Required**

¶57. As already mentioned, another reality under Mississippi law is that "circumstantial evidence is *not* inferior to direct evidence when all the facts are considered." ***Bogard v. State***, 233 So. 2d 102, 105 (Miss. 1970) (emphasis added). To the contrary, in the eyes of our law, "[c]ircumstantial evidence is entitled to the same weight and effect as direct evidence." ***Cardwell***, 461 So. 2d at 760. And "this Court has upheld convictions based solely on circumstantial evidence." ***Id.***

¶58. That is why the Supreme Court has explained, when compared to direct evidence, "[c]ircumstantial evidence in this respect is intrinsically no different[.]" ***Holland***, 348 U.S. 121 at 140, 75 S. Ct. at 137. Because the burden of proof in a circumstantial-evidence case is the same as in any criminal case—guilty beyond a reasonable doubt—"where the jury is properly instructed on the standards for reasonable doubt, such an additional instruction on circumstantial evidence is confusing and incorrect[.]" ***Id.*** at 139-40, 75 S. Ct. at 137. And

26

I see no rational reason this Court should not join all federal courts and a majority of state

courts that have abolished the circumstantial-evidence instruction requirement.[22]

---

[22] I am not the first justice on this Court to point out that no federal court and most state courts have abolished the circumstantial-evidence instruction. Thirty years ago, Justice Robertson cited not only the United States Supreme Court's *Holland* opinion but also listed eleven states' cases as examples of the abolishment trend. *Mack*, 481 So. 2d at 797 (Robertson, J., concurring) (citing *Holland*, 348 U.S. at 139-140, 75 S. Ct. at 137-138; *Rumph v. State*, 687 S.W.2d 489, 493 (Tex. Ct. App. 1985); *State v. Brown*, 100 N.M. 726, 676 P.2d 253, 255 (1984); *State v. Lerch*, 296 Or. 377, 677 P.2d 678, 683-90 (1984); *State v. Bush*, 58 Hawaii 340, 569 P.2d 349 (1977); *State v. Bell*, 90 N.M. 134, 560 P.2d 925, 928 (1977); *State v. Gosby*, 85 Wash. 2d 758, 539 P.2d 680 (1975); *Blakely v. State*, 542 P.2d 857 (Wyo. 1975); *State v. Wilkins*, 215 Kan. 145, 523 P.2d 728 (1974); *People v. Bennett*, 183 Colo. 125, 131 n.1, 515 P.2d 466, 469 n.1 (1973); *State v. Harvill*, 106 Ariz. 386, 476 P.2d 841, 844 (1970); *Allen v. State*, 420 P.2d 465 (Alaska 1966); *Holland v. Commonwealth*, 323 S.W.2d 411, 413 (Ky. 1959)).

And in 2014, Justice Piece added twenty-one more states and even more cases to that list. *Burleson*, 166 So. 3d at 515 n.4 & 5 (Pierce, J., dissenting) (citing federal cases *United States v. Johnson*, 713 F.2d 633, 653 (11th Cir. 1983); *United States v. Atnip*, 374 F.2d 720, 722 (7th Cir. 1967); *Wood v. United States*, 361 F.2d 802, 806 (8th Cir. 1966); *Dirring v. United States*, 328 F.2d 512, 515 (1st Cir. 1964); *Strangway v. United States*, 312 F. 2d 283, 285 (9th Cir.1963); *Hunt v. United States*, 316 F.2d 652, 654 (D.C. Cir. 1963); *United States v. Thomas*, 303 F.2d 561, 563 (6th Cir. 1962); *United States v. Moia*, 251 F.2d 255, 258 (2d Cir. 1958); *Corbin v. United States*, 253 F.2d 646, 649 (10th Cir. 1958); *United States v. Allard*, 240 F.2d 840, 841 (3d Cir. 1957); *Brewer v. United States*, 224 F.2d 189, 191 (5th Cir. 1955); and state cases *State v. Logan*, 747 S.E.2d 444, 452 (S.C. 2013); *State v. Dorantes*, 331 S.W.3d 370 (Tenn. 2011); *Ex parte Carter*, 889 So. 2d 528 (Ala. 2004); *State v. Humpherys*, 8 P.3d 652 (Idaho 2000); *State v. Guthrie*, 461 S.E.2d 163 (W. Va. 1995); *State v. Grim*, 854 S.W.2d 403 (Mo.1993); *State v. Jenks*, 574 N.E.2d 492, 503 (Ohio 1991), *superseded by constitutional amendment on other grounds as stated in State v. Smith*, 684 N.E.2d 668 (Ohio 1997); *Commonwealth v. Sanders*, 551 A.2d 239 (Pa. 1988); *People v. Bryant*, 499 N.E.2d 413 (Ill. 1986); *State v. Adcock*, 310 S.E.2d 587 (N.C. 1984); *Hankins v. State*, 646 S.W.2d 191 (Tex. Crim. App. 1983); *State v. Smith*, 434 A.2d 664, 668 (Conn. 1981); *State v. Derouchie*, 440 A.2d 146 (Vt. 1981); *Matter of Use by Trial Courts of Standard Jury Instructions in Criminal Cases*, 431 So. 2d 594 (Fla. 1981); *State v. Eagle*, 611 P.2d 1211 (Utah 1980); *State v. Turnipseed*, 297 N.W.2d 308 (Minn. 1980); *State v. O'Connell*, 275 N.W.2d 197 (Iowa 1979); *State v. Roddy*, 401 A.2d 23 (R.I. 1979); *State v. Bell*, 560 P.2d 925 (N.M. 1977); *State v. Bush*, 569 P.2d 349 (Haw. 1977); *State v. Cowperthwaite*, 354 A.2d 173 (Me. 1976); *Bails v. State*, 545 P.2d 1155 (Nev. 1976); *State v. Gosby*, 539 P.2d 680 (Wash. 1975); *Blakely v. State*, 542 P.2d 857 (Wyo.

¶59. As Justice Robertson aptly put it, "the law should not impose a distinction between direct and circumstantial evidence where, at least in the present context, none rationally exists." *Mack v. State*, 481 So. 2d 793, 797 (Miss. 1985) (Robertson, J., concurring). Instead, the jury should be "instructed that the law makes no distinction between direct and circumstantial evidence but simply requires that, before convicting a defendant, the jury be satisfied of the defendant's guilt beyond a reasonable doubt from all the evidence in the case." *Id.* In short, jurors should not be concerned about whether evidence is "direct evidence" or "circumstantial evidence." They should consider and weigh *all* of the evidence presented.

¶60. Here, the jury was instructed that, to convict Moore, it had to be satisfied that Moore was guilty beyond a reasonable doubt. Thus, the jury was properly instructed, eliminating the need for a new trial. Instead of reversing Moore's second-degree murder conviction and remanding for a new trial, this Court should affirm.

**RANDOLPH, P.J., AND BEAM, J., JOIN THIS OPINION.**

---

1975); *People v. Austin*, 523 P.2d 989 (Colo. 1974); *State v. Draves*, 524 P.2d 1225 (Or. Ct. App. 1974); *State v. Wilkins*, 523 P.2d 728 (Kan. 1974); *Henry v. State*, 298 A.2d 327 (Del. 1972); *Murray v. State*, 658 S.W.2d 438, 442-43 (Ark. 1971)).

28