# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2019-CT-01467-SCT

*KOBE AUGUSTINE a/k/a KOBE JAQUAN
AUGUSTINE a/k/a  KOBE J. AUGUSTINE*

*v.*

*STATE OF MISSISSIPPI*

### ON WRIT OF CERTIORARI

| | |
|---|---|
| DATE OF JUDGMENT: | 09/16/2019 |
| TRIAL JUDGE: | HON. LAWRENCE PAUL BOURGEOIS, JR. |
| TRIAL COURT ATTORNEYS: | JASON MICHAEL JOSEF |
| | MATTHEW DRAKE BURRELL |
| | CHRISTOPHER BRIAN FISHER |
| | JIM L DAVIS, III |
| COURT FROM WHICH APPEALED: | HARRISON COUNTY CIRCUIT COURT, FIRST JUDICIAL DISTRICT |
| ATTORNEYS FOR APPELLANT: | OFFICE OF STATE PUBLIC DEFENDER BY: GEORGE T. HOLMES |
| | MOLLIE MARIE McMILLIN |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL BY: BARBARA WAKELAND BYRD |
| DISTRICT ATTORNEY: | JOEL SMITH |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| DISPOSITION: | THE JUDGMENT OF THE COURT OF APPEALS IS REVERSED. THE JUDGMENT OF THE HARRISON COUNTY CIRCUIT COURT IS REINSTATED AND AFFIRMED - 02/10/2022 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**EN BANC.**

**RANDOLPH, CHIEF JUSTICE, FOR THE COURT:**

¶1.    Kobe Augustine was convicted of second-degree murder for the killing of Nigel Poole

in Harrison County Circuit Court. A divided Court of Appeals[1] reversed and remanded Augustine's conviction, opining that the circuit court erred by admitting hearsay testimony and that the error was not harmless. *Augustine v. State*, No. 2020-KA-01467-COA, 2020 WL 7350676, at \*18 (Miss. Ct. App. Dec. 15, 2020). However, consistent with Mississippi law, the circuit court did not err by allowing an officer to testify to the content of a witness's prior statement for the purpose of impeachment. But even assuming that doing so was erroneous, the evidence against Augustine overwhelmingly supported his conviction.

### FACTUAL AND PROCEDURAL HISTORY

¶2.    Kobe Augustine, fifteen years old, shot and killed sixteen-year-old Nigel Poole. Augustine became a suspect during the police investigation of Poole's killing and was arrested after he was found hiding under his bed. When questioned by the police, Augustine initially stated that he "wasn't even there" when Poole was shot. He then said that someone shot at him and Poole from a car. Augustine later confessed that he and Poole had a confrontation, and Poole hit him on the left side of his face. Detective Werner did not find any indication of a struggle between the two.

¶3.    During the trial, Nilah Hands testified that she was with Augustine and Poole the day of the shooting and that she had seen Augustine with a .38-caliber revolver earlier that day. Hands also testified that she heard "two gunshots go off" and saw Augustine "running down

---

[1] Chief Judge Barnes authored the majority opinion and was joined by Presiding Judge Wilson and Judges Westbrooks, McDonald, and McCarty. Judge Lawrence concurred in part and dissented in part without a separate opinion. Judge Greenlee concurred in part and dissented in part, and his separate opinion was joined by Presiding Judge Carlton and Judge Lawrence.

the street by himself." Hands also testified that she heard Augustine tell Clarence Clay, "I shot him."

¶4. The State called Irby Jules as a witness. On direct examination, Jules denied ever giving a prior statement to the police. The State desired to impeach Jules. Outside of the jury's presence, the State called Officer Keyhoe to establish Jules's prior statement. During a proffer, Keyhoe testified that Jules stated that he had previously talked to Augustine and that Augustine said he wanted to "catch a body," meaning that he wanted to kill someone. Jules told the officer that Augustine had offered to sell him a .38 caliber revolver for $150 one week before the shooting of Poole. Jules also told police that he believed that Augustine and Poole were having relations with the same girl.

¶5. The circuit court allowed Keyhoe to testify to the specifics of Jules's statement. Augustine objected, arguing that the testimony offered through Keyhoe contained hearsay and was prejudicial. The circuit court issued a limiting instruction to the jury.

¶6. Augustine testified that he had the gun and that Poole asked to shoot it. Augustine said that when he pulled the gun, Poole hit him, and the two wrestled over the gun. Augustine said that he grabbed the gun and "fired a warning." Augustine said Poole was still coming toward him after the first shot, so he shot again. Augustine then admitted that he had previously told detectives that Poole fell after the first shot. Augustine also admitted to lying to his friends, his brother, and detectives about what happened because he was scared and "did not want to go to jail."

¶7. On appeal, the Court of Appeals reversed Augustine's conviction and remanded the

3

case for a new trial, opining the "admission of Officer Keyhoe's hearsay testimony constitutes error." **Augustine**, 2020 WL 7350676, at *1. The Court of Appeals held that Keyhoe's testimony regarding a prior statement was admissible for impeachment purposes but that other testimony regarding the content of Jules's statement was hearsay and prejudicial toward Augustine. **Id.** at *5. The Court of Appeals opined that the content of Jules's statement to the police only provided evidence of motive for the shooting. **Id.** at *6. The Court of Appeals further found that the prejudice caused by the officer's testimony was not cured by the circuit court's instruction. **Id.**

¶8.     In his opinion concurring in part and dissenting in part, Judge Greenlee wrote that the admission of Keyhoe's testimony did not constitute reversible error and that Augustine's conviction and sentence should be affirmed. **Id.** at *7 (Greenlee, J., concurring in part and dissenting in part). He wrote that because Keyhoe's "testimony was offered for impeachment purposes and the jury was instructed that it could not consider it as substantive evidence, the trial court's decision to admit the evidence was not an abuse of discretion and was consistent with Mississippi law." **Id.** at *8. Judge Greenlee further offered that an error, if any, in admitting the testimony was harmless and that the State met its burden with respect to the second-degree-murder charge. **Id.**

## DISCUSSION

¶9.     When reviewing a hearsay challenge, this Court applies the abuse-of-discretion standard. **White v. State**, 48 So. 3d 454, 456 (Miss. 2010). An erroneous admission of hearsay can be deemed harmless if "the same result would have been reached had the errors

4

not existed." *Id.* (internal quotation marks omitted) (quoting *Tate v. State*, 912 So. 2d 919, 926 (Miss. 2005)).

## I. The circuit court did not abuse its discretion by allowing the officer to testify to the content of the witness's prior statement.

¶10. Augustine first argues that the circuit court abused its discretion by allowing Officer Keyhoe to testify at all. Augustine argues that Keyhoe could not testify since Jules did not give an inconsistent statement. Rather, he denied giving a statement at all. Despite Augustine's arguments, the circuit court properly relied on the Mississippi Rules of Evidence to determine that Keyhoe's testimony was permissible for the limited purpose of impeachment.

¶11. Rule 607 of the Mississippi Rules of Evidence provides that "[a]ny party, including the party that called the witness, may attack the witness's credibility." MRE 607. This Court has held that not only inconsistent statements but also "a flat denial by a witness constitutes an inconsistency subject to impeachment." *Harrison v. State*, 534 So. 2d 175, 179 (Miss. 1988).

¶12. "Impeachment can be accomplished through the introduction of extrinsic evidence." *Id.* at 179 (citing MRE 613(b); *Hubbard v. State*, 437 So. 2d 430, 434-35 (Miss. 1983)). Rule 613(b), which specifically addresses extrinsic evidence of a prior inconsistent statement, reads in pertinent part:

> Extrinsic evidence of a witness's prior inconsistent statement is admissible only if the witness is given an opportunity to explain or deny the statement and an adverse party is given an opportunity to examine the witness about it, or if justice so requires.

5

MRE 613(b).

¶13.    In ***Harrison***, the Court held that a proper predicate for impeachment had been established and that impeachment through extrinsic evidence was proper. ***Harrison***, 534 So. 2d at 179. The witness was given an opportunity to explain and/or deny his statements, and the witness was available for examination by opposing counsel. ***Id.***

> The prior statements of Ray Lee Patty to Officer Coleman were inconsistent with his testimony at trial. On direct and re-direct, Patty denied telling Officer Coleman that he "heard Annie Ruth hollering," or that the defendant kept saying he "had messed them up." It was proper, therefore, to elicit from Officer Coleman that Patty had previously made these statements. It is clear without reference to authority that a flat denial by a witness constitutes an inconsistency subject to impeachment.

***Id.*** Our precedent, which governs the Court of Appeals' review, establishes that the trial judge has the discretion to admit prior inconsistent statements for impeachment purposes. ***Carothers v. State***, 152 So. 3d 277, 282 (Miss. 2014).  Only when the trial court finds that the purported purpose of impeachment for offering the statements is in bad faith or is subterfuge to mask the true purpose of the statement(s) to prove truth of the matter asserted is impeachment by prior inconsistent statement not allowed. ***Id.*** These requirements were not established in the record. Thus, no basis to override the trial court's ruling exists, and the ruling should not be disturbed.

¶14.    In ***Johnson v. State***, 905 So. 2d 1209 (Miss. 2005), this Court held that

> M.R.E. 613(b) does not provide that the witness has to *first* be afforded the opportunity to explain or deny the statement before the admission of extrinsic evidence of a prior inconsistent statement by a witness. *See* M.R.E. 613(b). The witness must only be afforded the opportunity to explain or deny the statement. *See* M.R.E. 613(b). The comment to M.R.E. 613(b) states that "the traditional insistence that the attention of the witness be directed to the

6

statement on cross-examination is *relaxed in favor of simply providing the witness an opportunity to explain and the opposite party an opportunity to examine the statement, with no specification of any particular time or sequence.*" M.R.E. 613(b) cmt. (emphasis added).

*Id.* at 1212-13. The trial court allowed officers to testify on rebuttal regarding a witness's prior statement. *Id.* at 1213. A witness had testified that she had not seen the defendant since late 2002. *Id.* Over the defense's objection, the officers testified in rebuttal that the witness made a statement that she had seen the defendant in March 2003. *Id.* at 1211-12. The witness was called in surrebuttal and testified that she did not make such a statement to the officers. *Id.* at 1212. The Court found that the officer's testimony was proper because the witness, called on surrebuttal, was provided an opportunity to explain the prior inconsistent statements. *Id.*

¶15.    In *Bush v. State*, 667 So. 2d 26, 30 (Miss. 1996) (internal quotation marks omitted), this Court affirmed trial court's allowing a prior statement to be introduced when the witness refused to cooperate after taking the stand and could "not remember" making the alleged statement to the police. *Bush*, *Johnson*, and *Harrison* clearly establish that a party may impeach a witness by allowing an officer to testify to prior statements made by the witness.

¶16.    First, Jules took the stand and denied ever talking to the police. But Jules's statement was detailed, and the substance of it was not easily forgettable. Keyhoe testified that Jules told police that Augustine said he wanted to "catch a body," meaning that he wanted to kill someone. Jules told the officer that Augustine had offered to sell him a .38 caliber revolver for $150 one week before the shooting. Keyhoe's testimony regarding Jules's prior statement was to demonstrate the clear inconsistency of Jules's testimony.

7

¶17. Finally, assuming arguendo that Keyhoe's testimony was prejudicial toward Augustine's defense, this Court has repeatedly held that the "prejudicial effect may be sufficiently alleviated if the judge instructs the jury to disregard it." ***King v. State***, 580 So. 2d 1182, 1189 (Miss. 1991). After Keyhoe's testimony, the jury was instructed that

> You have heard evidence that [Jules] made a statement prior to trial that may be inconsistent with the witness's testimony at this trial. If you believe that an inconsistent statement was made, you may consider the inconsistency in evaluating the believability of the witness's testimony. You may not, however, consider the prior statement as evidence of the truth of the matters contained in the prior statement.

¶18. This was a proper instruction by the circuit court. The Mississippi Rules of Evidence provide in pertinent part that "[i]f the court admits evidence that is admissible against a party or for a purpose—but not against another party or for another purpose—the court, on timely request, must restrict the evidence to its proper scope and instruct the jury accordingly." MRE 105. The jury was instructed to assess the statements not for their truth but for the credibility of the witness. In ***Pitchford v. State***, 45 So. 3d 216, 240 (Miss. 2010), this Court reaffirmed long-standing law that it is presumed that jurors follow the instructions of the court. Moreover, the United States Supreme Court has held that in most situations, jury instructions are an adequate solution to prevent error.

> "Unless we proceed on the basis that the jury will follow the court's instructions where those instructions are clear and the circumstances are such that the jury can reasonably be expected to follow them, the jury system makes little sense." We agree that there are *many* circumstances in which this reliance is justified. Not every admission of inadmissible hearsay or other evidence can be considered to be reversible error unavoidable through limiting instructions; instances occur in almost every trial where inadmissible evidence creeps in, usually inadvertently. "A defendant is entitled to a fair trial but not a *perfect* one."

8

***Bruton v. United States***, 391 U.S. 123, 135, 88 S. Ct. 1620, 20 L. Ed. 2d 476 (1968) (emphasis added) (citations omitted).

¶19.     In the case *sub judice*, Augustine had ample opportunity to use cross-examination to confront Keyhoe and Jules about the inconsistent testimony. Augustine's right to confront was never denied.  Here, we consider whether Mississippi Rule of Evidence 403 was violated. The only conflict before us is whether the admission of the officer's statements prejudiced Augustine, and our courts have clearly and repeatedly spoken on that subject. *See* ***King***, 580 So. 2d at 1189. Mississippi law provides that (1) prejudicial effect is alleviated upon instruction and (2) presumably jurors follows instruction.  ***King***, 580 So. 2d at 1189; ***Weaver v. State***, 272 So. 2d 636, 638 (Miss. 1973).  A trial judge abuses his discretion when he makes an error of law. ***Kirk v. Pope***, 973 So. 2d 981, 986 (Miss. 2007). No error of law occurred. The trial judge did not make an error of law by ruling that the prejudicial effect fails to substantially outweigh the probative value of Keyhoe's comments. *See* MRE 403.

¶20.     The jury found Augustine guilty of second-degree murder, and in doing so, the jury had to find beyond a reasonable doubt that he "did willfully, feloniously and without authority of law, kill and murder . . . while in the commission of an act eminently dangerous to others and evincing a depraved heart, regardless of human life, *although without any premeditated design to effect the death of [Poole]*." (Emphasis added.) *See* Miss. Code Ann. § 97-3-19(1)(b) (Rev. 2020). The verdict verified the jury's conclusion that Augustine acted "without any premeditated design to effect the death of" Poole and demonstrates that the jury was not prejudiced or swayed by the "catch a body" statement in deciding Augustine's fate.

9

¶21.    The facts presented support Augustine's conviction, even if one rejects Keyhoe's testimony. Nilah Hands observed Augustine with a .38 caliber revolver in his possession. Hands and Thompson testified that, after dark, Augustine and Poole walked down the street together and that Poole had said that he would be right back. When they left, Augustine had the handgun. Between five and seven minutes after they departed, Hands heard gunshots. She and Thompson went outside to see what was going on and, moments later, they saw Augustine running down the street alone. Hands asked Augustine about the gunshots, and he responded that the occupants of a white car had shot at him and Poole three times and that he had fired one shot at the car.

¶22.    Hands overheard **Augustine whisper to Clay that he had shot Poole**. Thompson saw Augustine give the revolver to Clay. Then, Augustine left. Clay opened the revolver's cylinder and showed the others that the revolver had been fired three times.

¶23.    Augustine was arrested after he was discovered hiding under his bed. During his arrest, Augustine exclaimed, "I don't have the gun, I don't have the gun" and "[d]on't shoot, I don't have a gun, don't shoot, I don't have a gun."

¶24.    Upon being questioned, Augustine told Detective Christopher Werner that he had not been present when Poole was shot. As the questioning continued, Augustine related that someone had shot at him and Poole from a car. *But then Augustine admitted that he had been the shooter.*

¶25.    These facts alone are enough to support a verdict of guilt of second-degree murder. Augustine stated in plain English that he had killed Poole. Keyhoe's testimony, describing

a premeditated notion to kill, is not requisite to a second-degree-murder conviction.

¶26. Based on the facts of this case and our existing law, even if the testimony was hearsay, the instruction by the circuit court cured any possible error absent prejudice. We cannot find that the court abused its discretion by admitting the testimony.

## II. Even if the circuit court abused its discretion, any error in admitting Keyhoe's testimony was harmless.

¶27. As detailed above, even if this Court were to find an abuse of discretion, the error was harmless. The standard for harmless error is "whether it appears 'beyond a reasonable doubt that the error complained of did not contribute to the verdict obtained.'" *Moffett v. State*, 49 So. 3d 1073, 1099 (Miss. 2010) (internal quotation marks omitted) (quoting *Brown v. State*, 995 So. 2d 698, 704 (Miss. 2008)). Even if an error occurs at trial, "we will not reverse a conviction where the overwhelming weight of the evidence supports the guilty verdict." *Tate*, 912 So. 2d at 926 (internal quotation mark omitted) (quoting *Burnside v. State*, 882 So. 2d 212, 216 (Miss. 2004)). Here, the evidence adduced at trial, along with numerous inconsistencies in Augustine's account of the incident and the obvious flaws in his self-defense claim, supports a guilty verdict of second-degree murder.

¶28. Augustine took the stand and testified in his own defense. Augustine admitted that he lied numerous times during the investigation. He admitted that he lied to his friends and brother when he told the story about the white car because he felt "ashamed." Augustine eventually admitted to shooting Poole, reverting to a self-defense story.

¶29. Augustine testified that he had paid Clarence Clay $100 for the gun and that he knew the gun had belonged to Poole. Augustine testified that when he left Hands's house, Poole

11

followed him asking to shoot the gun, so he suggested that they shoot the gun in an alley. Augustine claimed that Poole struck him in the face when he went to give the gun to Poole. He testified that they wrestled over the gun and that he got the gun and fired a warning shot, but Poole continued to come at him, so he fired another shot.

¶30. Dr. Mark LeVaughn, who performed Poole's autopsy, testified that Poole had sustained two gunshot wounds to his head. Dr. LeVaughn testified that he did not find anything that suggested any defensive wounds on Poole's body and that he did not believe the gun was fired within close range, despite Augustine's self-defense claim.

¶31. Other witnesses' testimonies placed Augustine at the scene of the shooting. Hands testified that she saw Augustine with a .38 revolver before he left her house with Poole. Witnesses Hands, Ladarius Thompson, and Andre Jefferson testified that they heard gunshots shortly after Augustine and Poole left Hands's house. Hands, Thompson, and Jefferson also testified that they did not believe Augustine's initial story about the gunshots coming from a white car because the number of gunshots that they heard did not add up with Augustine's account.

¶32. Even if we were to assume error, such would be harmless due to the overwhelming evidence supporting Augustine's conviction.

**CONCLUSION**

¶33. We reverse the judgment of the Court of Appeals, and we reinstate and affirm Augustine's conviction and sentence.

¶34. **THE JUDGMENT OF THE COURT OF APPEALS IS REVERSED. THE JUDGMENT OF THE HARRISON COUNTY CIRCUIT COURT IS REINSTATED**

12

**AND AFFIRMED.**

**MAXWELL, BEAM, ISHEE AND GRIFFIS, JJ., CONCUR. KITCHENS, P.J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY KING, P.J., COLEMAN AND CHAMBERLIN, JJ.**

**KITCHENS, PRESIDING JUSTICE, DISSENTING:**

¶35. Because I would affirm the decision of the Court of Appeals, I respectfully dissent. Kobe Augustine was tried for the murder of Nigel Poole. There were no eyewitnesses to the slaying. Augustine testified that he shot Poole in self-defense after the two had wrestled over a gun. Augustine's acquaintance, Irby Jules, was called to testify by the State, but he would not identify Augustine and said he did not recall having given a statement to the police. So in rebuttal the State called the police officer who had taken Jules's statement, Officer Nicholas Keyhoe. Over the defendant's objection, the trial court allowed Officer Keyhoe to testify not only that Jules had made a statement, but also to the contents of that statement—specifically, that Augustine had told Jules that he wanted to "catch a body," meaning that he wanted to kill someone, and that Augustine and Poole had been having relations with the same girl. Officer Keyhoe's hearsay testimony about what Jules had said provided a motive for Augustine to kill Poole, and it contradicted Augustine's self-defense claim. The Court of Appeals found correctly that Officer Keyhoe's testimony about the contents of Jules's statement was so prejudicial that its admission could not be cured by a limiting instruction and that it was not harmless error.

¶36. The majority finds that Jules's statements were admissible for impeachment purposes as prior inconsistent statements, that any prejudice was cured by a limiting instruction, and

13

that any error was harmless. I disagree with the majority's analysis and its conclusions concerning each point.

¶37. Hearsay is "a statement that . . . the declarant does not make while testifying at the current trial or hearing; and . . . a party offers in evidence to prove the truth of the matter asserted in the statement." MRE 801(c). "Hearsay is not admissible except as provided by law." MRE 802. The State's theory is that Jules's statements were not admitted for their truth and they were admissible for impeachment purposes as prior inconsistent statements. According to Mississippi Rule of Evidence 607, "[a]ny party, including the party that called the witness, may attack the witness's credibility." MRE 607. Rule 613(b) governs the admissibility of extrinsic evidence of a prior inconsistent statement. It provides in pertinent part that "[e]xtrinsic evidence of a witness's prior inconsistent statement is admissible only if the witness is given an opportunity to explain or deny the statement and an adverse party is given an opportunity to examine the witness about it, or if justice so requires." MRE 613(b).

¶38. The majority finds that Officer Keyhoe's testimony that Jules had given a statement informing him that Augustine had said he wanted to "catch a body" and that Augustine and Poole had been having intimate relations with the same girl was admissible to impeach Jules's testimony that he did not recall having talked to the police. But Jules had testified to nothing that was rebutted by Officer Keyhoe's detailed rendition of the statements Jules had made to him. The only portion of Jules's testimony that the State was entitled to rebut was Jules's short and simple claim that he did not recall having given a statement to the police.

14

That could have been accomplished by the prosecutor's asking Officer Keyhoe, "Did Jules give you a statement?" and Keyhoe's answering "Yes."

¶39.    Defense counsel's argument at trial aptly exposes the flaws in the majority's reasoning. Defense counsel argued that the impeachment testimony was unduly prejudicial because it exceeded the scope of Jules's flat denial that he had spoken to the police: "[Jules] didn't say anything to impeach. Nothing. What are they impeaching? Nothing. I think they are just trying to get a backdoor way to get in those same statements they didn't get in with the witness." Defense counsel argued also that it would be impossible to prevent the jury from considering for its truth Jules's assertion that, in the weeks before the crime, Augustine had expressed a desire to kill someone:

> And how are you going to take that out of a jury's mind. It's impossible. That's why it's so bad in this case, and in this case, it is unbelievably bad. Even though we'll give them an instruction that says you're [not] supposed to consider the contents of those statements, they aren't going to be able to wipe those babies out. That's horrible.

¶40.    It is true that unsworn prior inconsistent statements are admissible to impeach a witness's credibility. *Carothers v. State*, 152 So. 3d 277, 282 (Miss. 2014). But because such statements are "fraught with hearsay problems," they are not admissible as substantive evidence. *Id.* (citing *Wilkins v. State*, 603 So. 2d 309, 322 (Miss. 2014), *overruled on other grounds by Carothers*, 152 So. 3d 277). Counsel should not seek to admit prior inconsistent statements under the "guise of impeachment for the *primary* purpose of placing before the jury substantive evidence which is not otherwise admissible." *Flowers v. State*, 773 So. 2d 309, 326 (Miss. 2000) (internal quotation marks omitted) (quoting *Harrison v. State*, 534 So.

2d 175, 178 (Miss. 1988)). Extrinsic evidence of a prior inconsistent statement "must still pass through Rule 403[.]" *Portis v. State*, 245 So. 3d 457, 471 (Miss. 2018). Mississippi Rule of Evidence 403 provides that, "[t]he court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." MRE 403.

¶41.    The probative value of the statements used by the State to impeach Jules's credibility was greatly exceeded by the statements' prejudicial effect and the substantial danger that the jury would consider them as substantive evidence. MRE 403. At the core of this case was the question of what, if anything, had motivated Augustine to shoot Poole. Although evidence of motive is not necessary to sustain a murder conviction, *Wall v. State*, 379 So. 2d 529, 532 (Miss. 1980), proof of motive benefits the prosecution. The State argued that Augustine had acted with deliberate design, and Augustine countered that he had shot Poole in self-defense. There were no eyewitnesses. Officer Keyhoe's testimony about the contents of Jules's statement, if considered substantively, showed that Augustine had a desire to kill someone and a motive to kill Poole. That was very powerful evidence that, if believed, undermined Augustine's self-defense claim. Officer Keyhoe's testimony that Jules had spoken with him refuted Jules's claim that he did not remember talking to the police, and it was damaging to Jules's credibility. The additional testimony from Officer Keyhoe reciting Jules's specific statements to him was an impermissible addition to the State's attempt to discredit Jules and it severely prejudiced Augustine, so much so that it was more prejudicial than probative.

16

MRE 403. No hearsay exception applies to Officer Keyhoe's testimonial rendition of what Jules had said to him. MRE 803; 804(b).

¶42. The majority finds that no error occurred because the trial court gave a limiting instruction that told the jury not to consider Officer Keyhoe's testimony as substantive evidence. It suggests that such an instruction protects against the risk of the jury's improper consideration of impeachment evidence as substantive in each and every situation. The Court of Appeals aptly recognized that the inquiry is more nuanced. "[T]here are some contexts in which the risk that the jury will not, or cannot, follow instructions is so great, and the consequences of the failure so vital to the defendant, that the practical and human limitations of the jury system cannot be ignored." *Augustine v. State*, No. 2019-KA-01467-COA, 2020 WL 7350676, at \*6 (Miss. Ct. App. Dec. 15, 2020) (internal quotation marks omitted) (quoting *James v. State*, 124 So. 3d 693, 700-01 (Miss. Ct. App. 2013) (quoting *Bruton v. United States*, 391 U.S. 123, 135, 88 S. Ct. 1620, 20 L. Ed. 2d 476 (1968))). One such context occurs when a witness's prior statements are so inflammatory that the jury would find them impossible to set aside. *Wilkins*, 603 So. 2d at 319. "[A] jury attempting to comply with the instruction 'might endeavor to do so, and believe they were doing so, and still be involuntarily and unconsciously influenced thereby.'" *Augustine*, 2020 WL 7350676, at \*6 (quoting *James*, 124 So. 3d at 700-01). Because Officer Keyhoe's testimony provided a motive for the otherwise unexplained killing and refuted Augustine's self-defense claim, it was highly prejudicial and created a substantial danger that the jury would consider it as substantive evidence despite the limiting instruction.

¶43.   The majority speculates that no prejudice occurred because the jury found Augustine guilty of second-degree murder, which does not require premeditation. Mississippi Code Section 97-3-19(1)(b) (Rev. 2020) provides that

> The killing of a human being without the authority of law by any means or in any manner shall be murder . . . [w]hen done in the commission of an act eminently dangerous to others and evincing a depraved heart, regardless of human life, although without any premeditated design to effect the death of any particular individual, shall be second-degree murder[.]

But to find Augustine guilty of second-degree murder, the jury first had to reject Augustine's self-defense claim. Officer Keyhoe's testimony put before the jury, via Jules's statements to the police, evidence that, if believed, proved Augustine's motive and his intent. It was prejudicial because it preponderated strongly against the theory that Augustine had shot Poole in self-defense. The trial court's limiting instruction, while undoubtedly well-intended, was an ineffective attempt to unring a loudly rung bell.

¶44.   Officer Keyhoe's account of Jules's statements was unnecessary to the State's rebuttal of Jules's claim that he could not recall having talked to the police, but it was highly relevant to the State's desire to inform the jury of Augustine's motive for having shot his friend, Poole; and it directly contradicted Augustine's claim that he had shot Poole in self-defense. The error was far from harmless. An error may be deemed harmless if the Court can say "beyond a reasonable doubt that the error complained of did not contribute to the verdict obtained." *Moffett v. State*, 49 So. 3d 1073, 1099 (Miss. 2010) (internal quotation marks omitted) (quoting *Brown v. State*, 995 So. 2d 698, 704 (Miss. 2008)). Many of the witnesses had been mutual friends of Augustine and Poole. They testified that Augustine and Poole had

18

been best friends prior to the killing. It was undisputed that Augustine shot and killed Poole. The question of why he had turned on his friend was the most puzzling issue in the trial. And Officer Keyhoe's testimony about what Jules had said provided the jury an answer to that important question. Considered substantively, Officer Keyhoe's testimony refuted Augustine's claim that he had shot Poole in self-defense after the two had wrestled over the gun. The testimony was so prejudicial that the likelihood that the jury was unable to follow the limiting instruction was substantial. I cannot say beyond a reasonable doubt that the admission of Officer Keyhoe's rendition of Jules's extra-judicial statements did not contribute to the verdict. I would affirm the Court of Appeals' well-reasoned decision to reverse and remand this case for a new trial.

**KING, P.J., COLEMAN AND CHAMBERLIN, JJ., JOIN THIS OPINION.**